IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| v. | ) No. 2:17cr126 ) |
| DARYL G. BANK, | ) ) |
| Defendant. | ) ) ) |

GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S FIRST MOTION *IN LIMINE*

The United States of America, by and through Dana J. Boente, United States Attorney, and Melissa E. O'Boyle and Elizabeth M. Yusi, Assistant United States Attorneys, hereby submits its response in opposition to defendant's First Motion *in Limine*. Dkt. 42. Defendant's motion is overly broad as it seeks to exclude evidence of the victims' losses as well as collateral consequences arising therefrom. The Court should deny defendant's motion as evidence of victims' losses satisfies Rules 401 and 403, as it is highly relevant to the issues of defendant's fraudulent intent and materiality and not unfairly prejudicial, as the government has no intention of tendering evidence of additional collateral consequences. In support of its argument, the government states as follows:

I.     BACKGROUND FACTS

On August 23, 2017, a grand jury returned a fifteen-count indictment against defendants Daryl G. Bank (Bank or defendant) and Raeann Gibson. Dkt. 4. The indictment charged defendant Bank with conspiracy to commit mail and wire fraud in violation of Title 18, United States Code, Section 1349, mail fraud in violation of Title 18, United States Code, Section 1341,

wire fraud in violation of Title 18, United States Code, Section 1343, and engaging in unlawful monetary transactions in violation of Title 18, United States Code, Section 1957. These charges arise from a five-year scheme to defraud investors – almost all of whom were at or near retirement age – of millions of dollars. The thirty-page indictment provided substantial details of this scheme through which defendant successfully defrauded over 300 investors across the country of over $20 million.

Specifically, the indictment alleges that defendants, Bank and Gibson, engaged in a conspiracy to personally profit by misleading investors in material ways about the use of, control, nature, and status of invested funds. Bank and Gibson, operating through numerous limited liability companies, intentionally misled investors, obtained investment funds and stole large portions of such funds for their own personal use. Importantly, the evidence presented at trial will demonstrate that Bank and Gibson targeted unsophisticated victims who were at or near retirement age by, among other things, hosting social security maximization seminars. Bank and Gibson targeted retirees with retirement funds to invest. Throughout the scheme, Bank, Gibson, and their army of sales agents obtained personal information from each victim including, but not limited to, the victim's age, employment, and the amount of money saved in individual retirement accounts. Armed with this information, the defendants and their agents encouraged retirees to invest in Bank's highly speculative, illiquid, fraudulent "private equity" investments. Bank and Gibson directed the investors to open self-directed IRA accounts at trust companies. Immediately upon receipt of these funds, Bank and Gibson stole between 20%-70% of the investment funds for their own purposes.

To conceal their fraudulent activities, Bank and Gibson knowingly and intentionally deceived investors as to the status of their invested funds by causing trust companies to send

fraudulent quarterly statements to investors. In at least one instance, after an investment failed, the conspirators unilaterally moved funds to another illiquid, speculative investment without providing notice to the investors that the investment had failed. Indeed, Bank and Gibson routinely concealed from the investors the existence of numerous investigations into their fraudulent activities, in part by sending lulling letters to the investors aimed at convincing them that nothing was amiss with their investment.

Moreover, throughout the scheme numerous victims (and family members of victims) confronted Bank and Gibson about the status of their investment funds. These victims often demanded that Bank repay their invested funds and, when doing so, often described to Bank and/or Gibson the impact that the loss of such funds would have on their lives. Bank's responses to these conversations constitute highly relevant evidence of defendant's knowledge and intent particularly given the perpetual nature of the scheme. Indeed, as one example, Bank and Gibson created a completely separate fund – DSPF Group – and fraudulently obtained funds for a failed investment from new investors to repay original investors who voiced such complaints. Evidence that victims confronted Bank about the impact of the loss of these funds is highly relevant, intrinsic to the scheme, and should be admissible at trial.

Finally, Bank and Gibson continued their fraudulent misrepresentations to investors as these investments failed. As alleged in the indictment, in July 2016, Bank and Gibson, through another conspirator, finally disclosed that the weMonitor investment had failed, and that a new company "BlueDot Corporation" was incorporated to hold the "assets of weMonitor, Inc." This conspirator did not disclose his past affiliation with Bank, that he was one of the architects of the Investment Offering, or that Bank and Gibson had diverted over $1 million in investor funds.

They made a show of purportedly selling the "assets" of this company when, in fact, they received nominal funds and the victims' investment was a complete and total loss.

As a result of defendant's fraudulent scheme, victims have suffered losses exceeding $20 million. In many circumstances, the victims lost almost the entirety of the funds they had set aside for retirement. After years of deceit and concealment, in late 2017, many victims received notice from an independent, outside trust company that the true value of their investments with Daryl Bank is zero.

In his first motion *in limine*, defendant asks the Court to exclude alleged evidence of victims' losses and collateral "victim impact evidence" from the trial in this matter. For the reasons discussed below, the government respectfully submits that the Court should deny defendant's motion.

II.     ANALYSIS

Defendant's motion is overly broad and seeks to exclude highly relevant evidence of loss in addition to other collateral consequences. There is a difference. The government fully intends to present evidence of loss in this case. As discussed below, the victims' losses often constitute highly relevant evidence of intent to defraud particularly where, as here, defendant continued to lie to investors about failed investments, engaged in Ponzi activity, and lied while attempting to cover up such losses. In this case, the victims' losses also are relevant to the issue of materiality of the lies and omissions defendant told to the victims.

However, as discussed below, the government does not intend to solicit testimony on direct examination about collateral consequences arising from the loss of the victims' retirement funds such as losing a family home, having to continue to work beyond an expected retirement date, or having to obtain another job late in life to support themselves. Absent the defendant

opening the door on cross-examination, the government also does not intend to ask victims how they feel about losing all of their retirement funds or what impact defendant's scheme has had on their emotional state. As such, the government respectfully submits that the Court should deny defendant's first motion *in limine.*

### A. The Government's Evidence Of Loss Is Highly Relevant

The government's evidence of loss in this case is highly relevant and certainly satisfies Rule 401. In his motion, defendant claims that "evidence of an actual loss by an alleged victim, does not tend to prove or disprove a material fact, and is therefore inadmissible, pursuant to Fed R. Evid. 401, and its lack of probative value cannot overcome its prejudicial nature, as required by Fed. R. Evid. 403." (Dkt. 42 at 3). Defendant is simply wrong. Indeed, in *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994) – a case cited prominently throughout defendant's motion – the Third Circuit actually stated the exact opposite of defendant's assertion. In that case, the Third Circuit noted that while loss is not an element of mail fraud, "that does not mean that evidence of loss was irrelevant." *Id.* The Court further stated that:

> Proving specific intent in mail fraud cases is difficult, and, as a result, a liberal policy has developed to allow the government to introduce evidence that even peripherally bears on the question of intent. Proof that someone was victimized by the fraud is thus treated as some evidence of the schemer's intent. Also relevant is defendant's failure to take any steps to ameliorate the loss.

*Id.* (citations omitted); *see also United States v. Heimann,* 705 F.2d 662, 669 (2d Cir. 1983) ("While technically the success or failure of a scheme to defraud is irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not victims lost money can be a substantial factor in a jury's determination of guilt or innocence."). The Fourth Circuit also maintains that "[i]n a mail fraud prosecution, evidence that the victims suffered losses and the defendant refused to make good those losses is relevant to show defendant's specific intent to

5

defraud." *See United States v. Zehrbach,* 98 Fed. Appx. 211, 218-19 (4th Cir. May 11, 2004). This is true here as the evidence of retirement losses is directly relevant to the issues of intent and materiality. *See also Neder v. United States*, 527 U.S. 1, 24 (1999) ("[M]ateriality of falsehood is an element of the federal mail fraud [and] wire fraud [] statutes."); *United States v. Wynn*, 684 F.3d 473, 479-480 (4th Cir. 2012).

Federal Rule of Evidence 401 provides "that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." As the Fourth Circuit has noted, relevance "typically presents a low barrier to admissibility." *United States v. Leftenant,* 341 F.3d 338, 346 (4th Cir. 2003) (citing *United States v. Van Metre,* 150 F.3d 339, 349 (4th Cir. 1998)). To be admissible, evidence need only be "'worth consideration by the jury,' or have a 'plus value.'" *Id.* (quoting *United States v. Queen*, 132 F.3d 991, 998 (4th Cir. 1997).

Evidence of the victim's losses certainly is "worth consideration by the jury" in this case as they have bearing on the critical issues of intent and materiality. First, the victim loss evidence is highly relevant evidence of defendant's intent to defraud. As explained above, defendant's fraudulent scheme was extensive and included not only lies and omissions to convince investors to provide funds, but also intentional lies, misrepresentations, and omissions to cover up his theft of funds and the losses sustained because of his fraudulent conduct. The victims' losses constitute highly relevant evidence of intent to defraud as defendant lied to investors about the status of the failed investments, engaged in Ponzi activity to quiet victims complaining about such losses, and lied while attempting to cover up such losses. For example, defendant's fraudulent intent is on full display when evidence demonstrates that after receiving investor complaints due to losses arising from a failed investment, the defendant repackages that

6

failed investment to defraud new investors to repay original ones. As such, evidence regarding the victims' losses is intrinsic to the scheme and highly probative of defendant's intent to defraud. Accordingly, the government submits that it fully satisfies Fed. R. Evid. 401 on this ground alone.

Second, the government also has to prove materiality of the fraudulent statements and omissions and, to do so, it fully intends to present the full nature and context of the victims' investments. The victims gave the defendant, and his agents, full information about themselves and their financial position. As such, the government fully intends to present highly relevant testimony regarding each victim's age, educational background, employment history, level of financial sophistication, the amount of money the victim had saved for retirement, and what portion of those funds the victim invested in defendant's fraudulent investment vehicles. In almost every instance, these victims were investing retirement funds that they had worked for years to save. This background explains why the lies and omissions that defendant represented or caused to be represented to the victims were objectively material. For example, these victims would never have invested retirement money with Bank if they had known he planned to steal 50% of the funds upon receipt. But for Bank's concealment of his FINRA ban, the victims never would have tendered their retirement funds to his care. Stated simply, the nature and extent of the victims' losses – including how much of their retirement funds they lost – is highly probative evidence of materiality and should be admitted. *See United States v. Rand,* 2011 WL 4498849, *2 (W.D.N.C. Sept. 27, 2011) (concluding that the loss amount in the indictment was not inflammatory, but "may tend to reflect the defendant's intent" and …the "loss amount tends to establish materiality of the statements at issue.").

B. <u>The Government's Evidence of Loss Satisfies Rule 403</u>

Moreover, in weighing the evidence under FED. R. EVID. 403, the government respectfully submits that the scales of justice tip in favor of admitting the highly probative evidence of loss in the upcoming trial. As discussed above, the evidence of loss is highly relevant. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Williams,* 445 F.3d 724, 730 (4th Cir. 2006). Here, the government submits that evidence of loss of these funds would be prejudicial to defendant "just as all evidence suggesting guilt is prejudicial to a defendant." *Id.* However, this type of prejudice does not justify exclusion. Instead, "[e]vidence may be excluded under Rule 403 only if the evidence is *unfairly* prejudicial and, even then, only if the unfair prejudice *substantially* outweighs the probative value of the evidence." *Id.* (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004)). As such, "[e]vidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence." *Id.* (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)).

Here, the government is not seeking to "inflame" the emotions of the jury by presenting evidence that the victims suffered losses. These are the facts of this case, and they do not "unfairly prejudice" the defendant. S*ee United States v. Gougis*, 432 F.3d 735, 743 (7th Cir. 2005) ("The vast majority of the government's evidence against a defendant is prejudicial to him. That's the idea."). More importantly, the government does not intend to present evidence

8

of the collateral consequences arising from the losses suffered because of defendant's scheme to defraud.

In attempting to escalate the nature of the undue prejudice arising from the government's loss evidence, the defendant claims "it is anticipated the government may also seek to have the victims testify regarding collateral events that may have occurred to them, such as losing their homes, retirements and/or enduring other hardships collateral to the investments." (Dkt. 42 at 2). He further states, "it is anticipated that the government may allege the victims were particularly vulnerable and that they suffered losses, financial and emotional, in excess of any amount lost in the initial investments." Id.

The government certainly understands defendant's concern as many of his victims have suffered serious collateral consequences because of the losses sustained as a result of his fraudulent conduct. The losses sustained by the victims have resulted in marital discord, the inability to pay for basic human needs, victims working long beyond scheduled retirement dates, and victims looking for new jobs to support them in retirement. However, beyond the amount of losses sustained, the government does not intend to elicit testimony about after-the fact collateral consequences they have suffered because of defendant's scheme on direct examination.[1] The government certainly understands that the losses sustained by victims and the collateral consequences arising from such losses are two very different things. The government has no intention – on direct examination – of asking the victims to detail the many collateral consequences they have endured as a result of defendant's scheme to defraud.

---

[1] If defense counsel opens the door to the admission of such evidence during cross-examination, then the government fully intends to walk through the door on redirect and elicit testimony about such collateral consequences.

9

Moreover, it is unclear what type of evidence regarding victims' vulnerabilities the defendant is seeking to exclude in this motion. For many of the elderly victims the government intends to call at trial, the vulnerabilities will be obvious from the minute they set foot in the courtroom and walk to the stand. If the victim has difficulty seeing or hearing, then the government intends to make that clear at the outset to ensure that the Court can provide accommodations to provide accurate testimony. However, again, the government does not intend to ask victims how the loss of all their retirement monies because of defendant's fraudulent scheme makes them feel, how it has affected them emotionally, or whether they have suffered anxiety or other medical problems arising from the stress of dealing with such a severe financial loss.

To conclude, the government's victim loss evidence is highly relevant as to intent and materiality and is not unfairly prejudicial. Defendant targeted retirees, lied to them, stole their retirement funds, and those funds are now gone. These are the cold-hard facts of this case; they are highly relevant and the jury should hear them. Moreover, absent the defendant opening doors on cross-examination, the government has no intention of asking victims to describe either the collateral consequences or the emotional turmoil arising from the loss of their retirement funds. The government's proffered evidence satisfies FED. R. EVID. 401 and 403 and should not be excluded from trial.

III. CONCLUSION

For the reasons outlined above, the government respectfully requests that the Court deny defendant's First Motion *in Limine*.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:      /s/
Melissa E. O'Boyle
Virginia State Bar No. 47449
Elizabeth M. Yusi
Virginia State Bar No. 91982
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - Melissa.OBoyle@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 25, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Jason M. Wandner
Jason M. Wandner, P.A.
100 N. Biscayne Boulevard
Suite 1607
Miami, Florida 33132
jason@wandnerlaw.com

James O. Broccoletti
Zoby & Broccoletti, P.C.
6663 Stoney Point South
Norfolk, Virginia 23502
james@zobybroccoletti.com

By: _____/s/_____
Melissa E. O'Boyle
Assistant United States Attorney
Virginia State Bar No. 47449
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - melissa.oboyle@usdoj.gov