UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

UNITED STATES OF AMERICA,

v.                                    Criminal No. 2:17cr126

DARYL G. BANK,

      Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Daryl G. Bank's
("Defendant" or "Bank") Motion to Dismiss for Double Jeopardy
Violation.  Def.'s Mot., ECF No. 139.  Defendant moves to dismiss
the pending indictment against him in light of the United States
Supreme Court's decision in Kokesh v. SEC, 137 S. Ct. 1635 (2017).
Id.  For the reasons explained below, Defendant's motion to dismiss
is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the second superseding indictment issued by a Grand Jury
of this Court on May 25, 2018, Bank was charged with the following
counts:

- Conspiracy to commit mail and wire fraud, in violation of 18
  U.S.C. § 1349 (Count 1);

- Mail fraud, in violation of 18 U.S.C. §§ 2, 1341 (Counts 2-
  6);

1

- Wire fraud, in violation of 18 U.S.C. §§ 2, 1343 (Counts 7-12);

- Conspiracy to sell unregistered securities and to commit securities fraud, in violation of 18 U.S.C. § 371 (Count 13);

- Unlawful sale of unregistered securities, in violation of 15 U.S.C. §§ 77e, 77x and 18 U.S.C. § 2 (Counts 14-18);

- Securities fraud, in violation of 15 U.S.C. §§ 77q, 77x and 18 U.S.C. § 2 (Counts 19-22);

- Conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h) (Count 23);

- Engaging in unlawful monetary transaction, in violation of 18 U.S.C. §§ 2, 1957 (Counts 24-28).

Second Superseding Indictment, ECF No. 105. These charges arise from allegations that Bank and others executed a scheme to defraud investors. Id. at 30.

A separate prior civil enforcement action was initiated on April 6, 2015 by the United States Securities and Exchange Commission ("SEC") in the United States District Court for the District of Arizona against Bank and others for several investment activities, some of which form the basis of the securities offenses in the second superseding indictment now before this Court. Gov't Resp. 2, ECF No. 147 (citing SEC v. Janus Spectrum LLC, No. CV-15-609 (D. Ariz.)). On February 8, 2018, the District of Arizona

2

entered a final judgment against Bank in the civil enforcement action, holding Bank civilly liable for a disgorgement of $4,494,900, pre-judgment interest in the amount of $802,553, and a civil penalty of $4,494,900 pursuant to 15 U.S.C. §§ 77t(d), 78u(d)(3). SEC v. Janus Spectrum LLC, No. CV-15-609, 2018 U.S. Dist. LEXIS 21709, at *2, *8 (D. Ariz. Feb. 8, 2018); Gov't Ex. 2 at 5, ECF No. 147-2.

Defendant filed the instant motion on November 27, 2018. Def.'s Mot., ECF No. 139. Defendant claims that the 2017 Supreme Court decision in Kokesh, which declared SEC disgorgement a penalty, bars pursuit of the instant criminal action under the Double Jeopardy Clause of the Fifth Amendment because Defendant has already been punished for some of the activity with which he is charged. Def.'s Br. 2, ECF No. 140. The Government replied on December 11, 2018, arguing (1) that Defendant unfairly delayed filing the instant motion, (2) that he waived his right to pursue a Double Jeopardy claim, (3) that he cannot claim Double Jeopardy because he only received a civil punishment, and (4) that, even if Double Jeopardy applied, it would only apply to the pending criminal charges associated with the specific investment activities involved in the civil action. Gov't Resp., ECF No. 147. Defendant filed a reply on December 20, 2018, contesting most of the Government's assertions, but conceding that Double Jeopardy would only bar some of the charges in the indictment

3

because only a portion of the criminal allegations are related to the investment activities punished by the civil action.[1] Def.'s Reply, ECF No. 155. Accordingly, Defendant is pursuing a partial dismissal of the pending criminal charges based on the conduct that was punished by the Janus Spectrum case. Having been fully briefed, this matter is now ripe for disposition.

## II. LEGAL STANDARD

The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution states that "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. Const. amend. V. This guarantee protects criminal defendants from both multiple punishments and successive prosecutions for the same offense. United States v. Dixon, 509 U.S. 688, 696 (1993); United States v. Ragins, 840 F.2d 1184, 1187 (4th Cir. 1988).

In explaining the parameters of a restriction on multiple punishments, as is relevant in this case, the Supreme Court has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, 'in common parlance,' be described as punishment." Hudson v. United States, 522 U.S. 93, 98-99 (1997) (quoting United States ex rel. Marcus v.

---

[1] Because Defendant concedes that his motion only applies to certain investment activities and not the entirety of the criminal charges against him, the Court does not address the Government's argument on this issue in the analysis section below.

4

Hess, 317 U.S. 537, 549 (1943)).  Rather, "[t]he Clause protects only against the imposition of multiple criminal punishments for the same offense."  Id. at 99.  To determine whether a punishment is civil or criminal, the Supreme Court has held that "[a] court must first ask whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'"  Id. (quoting United States v. Ward, 448 U.S. 242, 248 (1980)).  In doing so, courts are required to "begin with reference to [the statute's] text and legislative history."  Seling v. Young, 531 U.S. 250, 262 (2001).  If Congress "'has indicated an intention to establish a civil penalty,'" a court must then consider the following seven factors, with respect to "the statute on its face," to determine if the civil penalty is transformed into a criminal penalty for the purposes of Double Jeopardy:

> (1)"whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"'; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment -- retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

Hudson, 522 U.S. at 99-100 (first quoting Ward, 448 U.S. at 248-49, then quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-

69 (1963)); accord United States v. Dyer, 908 F.3d 995, 1002 (6th Cir. 2018), cert. denied, 587 U.S. __ (Apr. 22, 2019) (No. 18-8436); Brewer v. Kimel, 256 F.3d 222, 226 (4th Cir. 2001); United States v. Trogden, 476 F. Supp. 2d 564, 569-72 (E.D. Va. 2007). "'[O]nly the clearest proof' will suffice to override legislative intent and transform . . . a civil remedy into a criminal penalty." Hudson, 522 U.S. at 100.

### III. ANALYSIS

#### A. Timely Filing

In response to Defendant's motion, the Government first argues that Defendant unfairly delayed filing the motion. While the Court recognizes that Defendant could have filed this motion much earlier, he was not required to file it within the pretrial motions deadline, let alone prior to trial. United States v. Jarvis, 7 F.3d 404, 409 (4th Cir. 1993) (stating that a Double Jeopardy claim "may, but need not," be raised prior to trial); see Fed. R. Crim. P. 12(b)(3). Additionally, Defendant's delay in filing is not necessarily indicative of the strength of his claim. It is equally likely that he focused his efforts on first filing motions that were time restricted, before devoting time to the present motion. Therefore, the Court declines to consider the timing of the motion in weighing its merits.

## B. Waiver

The Government next argues that, in the <u>Janus Spectrum</u> consent judgment, Defendant waived his right to pursue a Double Jeopardy claim. Defendants are permitted to waive their constitutional right to assert a Double Jeopardy claim. <u>See</u> <u>Menna v. New York</u>, 423 U.S. 61, 62 n.2 (1975); <u>see also</u> <u>United States v. Van Waeyenberghe</u>, 481 F.3d 951, 957 (7th Cir. 2007). However, the Supreme Court has explained that "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," and has cautioned against presuming that a waiver of fundamental constitutional rights was knowing and voluntary. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938). "In examining a purported waiver of the double jeopardy right, we must draw all reasonable presumptions against the loss of such a right." <u>United States v. Morgan</u>, 51 F.3d 1105, 1110-11 (2d Cir. 1995).

### 1. Intentional and Knowing

Here, the consent judgment between Defendant and the SEC in the <u>Janus Spectrum</u> case contains the waiver provision at issue. Such provision states: "Defendant waives any claim of Double Jeopardy based on the settlement of this proceeding, including the imposition of any remedy or civil penalty herein." Gov't Ex. 1 at 3, ECF No. 147-1. Although Defendant argues that his waiver could not have been meaningfully knowing and intentional prior to the change of law in <u>Kokesh</u>, which was decided six months after his

7

waiver, there is no indication that Defendant's waiver was not knowing and voluntary based on the law at the <u>time of the waiver</u>, and he does not request to withdraw his waiver based on the new law. <u>See</u> Def.'s Reply ¶ 6. Rather, Defendant argues that <u>Kokesh</u> altered the Double Jeopardy analysis by declaring disgorgement to be punitive (a key factor in the Double Jeopardy analysis), thus creating a viable Double Jeopardy claim that did not exist at the time of his waiver and that may have caused him not to waive his right had it existed. <u>Id.</u> While the language of his waiver is broad and covers "<u>any</u> claim," Gov't Ex. 1 at 3 (emphasis added), there is some merit to the argument that Defendant did not waive a Double Jeopardy claim because, before <u>Kokesh</u>, such a claim was not viable under existing case law finding disgorgement remedial rather than punitive, and thus, rejecting similar Double Jeopardy claims. <u>See, e.g.</u>, <u>SEC v. Bilzerian</u>, 29 F.3d 689, 696 (D.C. Cir. 1994) ("Accordingly, we conclude that the disgorgement order is remedial in nature and does not constitute punishment within the meaning of double jeopardy."). Having considered the case law and the specific waiver language at issue here, and "drawing all reasonable presumptions against the loss of such a right," <u>Morgan</u>, 51 F.3d at 1110-11, the Court finds that the evidence currently before the Court is insufficient to show Defendant intentionally relinquished a <u>known</u> right. <u>Zerbst</u>, 304 U.S. at 464. Therefore, the Court looks to the language of the waiver.

## 2. Scope of Language

The Government argues that the scope of the language of Defendant's waiver in the consent judgment is sufficient for the Court to deny the instant Double Jeopardy motion. The language of Defendant's waiver provision is broader than that of the one deemed insufficient in Hudson, which did not expressly mention Double Jeopardy. Hudson, 522 U.S. at 97 n.2. However, although the language at issue broadly waives the right to make a Double Jeopardy claim, it does so without specific reference to criminal proceedings. In this respect, it is, therefore, almost identical to the language of the pre-Kokesh waiver that the United States Court of Appeals for the Seventh Circuit deemed an insufficient basis alone for denying a later Double Jeopardy claim. Van Waeyenberghe, 481 F.3d at 957. Therefore, having considered the case law and specific waiver language at issue here, the Court finds that the language of Defendant's waiver of his right to later assert a Double Jeopardy claim is insufficient alone to bar further consideration of his current Double Jeopardy claim. Thus, the Court declines to deny the motion to dismiss based on just the purported waiver. See id. at 957-98.

## C. Criminal Versus Civil Punishment

The Double Jeopardy Clause is meant to protect against successive punishments. See Dixon, 509 U.S. at 696. However, as noted above, not just any punishment triggers Double Jeopardy; the

9

punishment must be <u>criminal</u>. <u>Hudson</u>, 522 U.S. at 99. The issue before the Court is whether the disgorgement that was imposed on Defendant for violations of securities laws was civil or criminal in nature.[2]

Under <u>Hudson</u>, whether a penalty is civil or criminal in nature depends on a two-step analysis: (1) "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other,'" and (2) if the legislative preference is civil, whether the "clearest proof," based on seven non-dispositive and non-exhaustive factors, exists to "transform . . . a civil remedy into a criminal penalty." <u>Hudson</u>, 522 U.S. at 98-100 (quoting <u>Ward</u>, 448 U.S. at 248). Defendant argues that the decision in <u>Kokesh</u> is sufficient to establish the clearest proof necessary to transform the civil penalty of disgorgement into a criminal penalty for Double Jeopardy purposes.

<u>Kokesh</u> did not specifically address whether SEC disgorgement is civil or criminal in nature for Double Jeopardy purposes. Rather, the Supreme Court addressed the question of whether disgorgement constitutes a "penalty," as that term is used in 28 U.S.C. § 2462, the statute of limitations provision for enforcing

---

[2] Although civil monetary penalties were also imposed on Defendant pursuant to 15 U.S.C. § 77t(d) and 15 U.S.C. § 78u(d)(3), Defendant only contends that the disgorgement constitutes criminal punishment for Double Jeopardy purposes. Def.'s Br. 2.

a civil "penalty." Kokesh, 137 S. Ct. at 1643. The Court held
that "SEC disgorgement constitutes a penalty within the meaning of
[the statute of limitations in 28 U.S.C.] § 2462" because (1)
disgorgement is meant to protect the public interest by remedying
a harm to the public, (2) "SEC disgorgement is imposed for punitive
purposes" and serves as a deterrent, and (3) disgorgement is not
compensatory because the funds are paid to the court, not the
victims. Id. at 1643-44. Because Kokesh did not expressly address
whether disgorgement is civil or criminal in nature, the Court
must now determine how the Supreme Court's holding impacts the
analysis of the Hudson Double Jeopardy analysis. Each of Hudson's
two steps are discussed below.

### 1. Legislative Preference

Under the first step, the Court must determine whether the
legislature intended to create a civil or criminal penalty, asking
if the legislature "'indicated either expressly or impliedly a
preference for one label or the other.'" Hudson, 522 U.S. at 99
(quoting Ward, 448 U.S. at 248).[3]  To answer such question, the
Court "must begin with reference to [the statute's] text and
legislative history." Seling, 531 U.S. at 262.

---

[3] By only conducting an analysis of the seven factors in the second step of the
Hudson analysis, Defendant implicitly concedes that "the legislature. . . .
'indicated an intention to establish a civil penalty.'" Hudson, 522 U.S. at 99
(quoting Ward, 448 U.S. at 248-49); Def.'s Br. 6, ECF No. 140.  Despite the
implied concession, the Court conducts a complete analysis of the first step
for clarity.

### a. Statutory Construction

### 1. Statutory Text

There is some disagreement about which statutory provision actually authorizes disgorgement. Some courts suggest the authority comes from the provisions granting general equity jurisdiction in securities law violation cases (15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa). See, e.g., SEC v. Palmisano, 135 F.3d 860, 865-66 (2d Cir. 1998); SEC v. Desai, 145 F. Supp. 3d 329, 337-38 (D.N.J. 2015) ("Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and § 27 of the Exchange Act, 15 U.S.C. § 78aa, allow for disgorgement of all profits derived from violating the securities laws."). Other courts suggest disgorgement is an ancillary equitable power available to courts under the statutory provisions that grant courts the authority to issue injunctions in securities law violation cases (15 U.S.C. § 77t(b) and 15 U.S.C. 78u(d)(1)). See, e.g., SEC v. First City Fin. Corp., 890 F.2d 1215, 1230 (D.C. Cir. 1989) ("Disgorgement, then, is available simply because the relevant provisions of the Securities Exchange Act of 1934, sections 21(d) and (e), 15 U.S.C. §§ 78u(d) and (e), vest jurisdiction in the federal courts."); SEC v. Materia, 745 F.2d 197, 200-01 (2d Cir. 1984). Which statute actually authorizes disgorgement does not impact the Court's analysis on the issue of whether Congress intended disgorgement to be civil or criminal

because, as explained below, the language of each statute impliedly indicates a preference for the civil label.[4]

First, the language of sections 77v(a) and 78aa authorizes district courts to exercise jurisdiction over suits in equity in securities litigation. 15 U.S.C. § 77v(a) ("The district courts of the United States . . . shall have jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter.") (emphasis added); 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction . . . of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.") (emphasis

---

[4] Kokesh has sparked a debate about whether district courts have the authority at all to impose disgorgement because the Supreme Court appeared to question such authority. See Kokesh, 137 S. Ct. at 1642 n.3 (stating that the court offered "[n]o opinion on whether courts possess authority to order disgorgement in SEC proceedings"); Donna M. Nagy, The Statutory Authority for Court-Ordered Disgorgement in SEC Enforcement Actions, 71 S.M.U. L. Rev. 896, 898 (2018) (explaining how, at oral argument for Kokesh, the Justices questioned the authority to order disgorgement and invited challenges to it by disclaiming, in a footnote of the opinion, that it was not deciding the issue). Those arguing there is no authority for disgorgement suggest that, now that disgorgement has been declared a penalty, it can no longer be within a district court's equitable authority because a court cannot impose penalties when acting in equity. See, e.g., Stephen M. Bainbridge, INSIDER TRADING: Kokesh Footnote Three Notwithstanding: The Future of the Disgorgement Penalty in SEC Cases, 56 Wash. U. J.L. & Pol'y 17, 21-22 (2018). Those arguing that there is authority posit that just because disgorgement is a penalty for one purpose does not mean it is a penalty for all purposes, and that Congress has expressly recognized a court's power to order disgorgement. See, e.g., Nagy, supra, at 901-903. In March of 2019, a bill was introduced in the Senate that would resolve this debate by amending 15 U.S.C. § 78u(d) to expressly grant district courts the authority to order disgorgement. Securities Fraud Enforcement and Investor Compensation Act of 2019, S.799, 116th Cong. (2019).

That said, a district court's authority to order disgorgement is not at issue here. Accordingly, the Court assumes, for the purposes of this motion only, that district courts necessarily have the authority to order disgorgement under the equitable authority granted to them by one of the statutes discussed above. See 15 U.S.C. §§ 77t(b), 77v(a), 78aa, 78u(d)(1).

added).  Though the language of these statutes does not expressly label such jurisdiction as "civil," the Federal Rules of Civil Procedure have made it clear that suits in equity are considered civil actions.  Fed. R. Civ. P. 2 advisory committee's note to 1937 amendment ("Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules.").  Because suits in equity are treated as civil actions, the references to suits in equity in sections 77v(a) and 78aa, impliedly indicate a preference for the civil label.

Second, sections 77t(b) and 78u(d)(1) both state that, where someone is engaged in or about to engage in conduct that violates the securities laws, the SEC "may in its discretion bring an action in the proper district court of the United States . . . to enjoin such acts or practices."  15 U.S.C. §§ 77t(b), 78u(d)(1).  Both statutes also authorize the SEC to "transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings."  15 U.S.C. §§ 77t(b), 78u(d)(1).  Though the statutory language authorizing injunctions does not expressly label such authority as "civil," the reference to criminal proceedings as a distinct process controlled by the Attorney General suggests that injunction proceedings are not criminal. This distinction, along with the fact that injunctions are

equitable remedies available in suits in equity (which this Court just noted are _civil_ actions), impliedly indicates a preference for the _civil_ label in sections 77t(b) and 78u(d)(1).

This Court finds that the language of these statutes (15 U.S.C. §§ 77t(b), 77v(a), 78aa, 78u(d)(1)) indicates that Congress preferred the civil label. Because the disgorgement ordered in _Janus Spectrum_ was necessarily authorized by at least one of these statutes, it logically follows that, despite the lack of _express_ statutory authority for disgorgement, in each of these statutes Congress impliedly indicated a preference that disgorgement be civil in nature. As the United States Court of Appeals for the Second Circuit noted, "[t]he disgorgement remedy, which has long been upheld as within the general equity powers granted to the district court, . . . has not been considered a criminal sanction." _Palmisano_, 135 F.3d at 865-66 (internal citations omitted).

### 2. Statutory Framework

Defendant was ordered, pursuant to the district court's equitable authority in civil enforcement actions, to disgorge profits.[5] The civil basis upon which Defendant was ordered to make such disgorgement, and the statutory framework which separates

---

[5] Although the consent judgment in _Janus Spectrum_ does not specifically identify the statutes that authorized disgorgement, the authority to order disgorgement necessarily comes from one of two places: either the statutes granting general equitable authority in SEC enforcement actions (15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa) or the statutes granting courts the authority order injunctions in SEC enforcement actions ((15 U.S.C. § 77t(b) and 15 U.S.C. 78u(d)(1)).

civil and criminal penalties in the securities statutes, also suggest Congress intended SEC disgorgement to be civil in nature. For example, the civil equitable power of district courts can be contrasted with the courts' power to impose criminal sanctions for securities law violations, as expressly authorized by 15 U.S.C § 77x, upon which this criminal indictment rests, and 15 U.S.C. § 78ff, upon which criminal charges under 15 U.S.C. § 78a et seq. may be based. See Ward, 448 U.S. at 249. Though not as closely juxtaposed as the criminal and civil references of the statute in Ward, which authorized a criminal penalty in one paragraph and a civil penalty in the subsequent paragraph of the same section, the criminal penalties in sections 77x and 78ff are still in the same titles and chapters as the equitable authority granted to courts in civil enforcement actions. This juxtaposition between civil enforcement and criminal enforcement provides "added significance" to the fact that disgorgement has been recognized as an equitable remedy within the Court's civil enforcement power. Dyer, 908 F.3d at 1002. Therefore, this Court finds that "the separation of civil and criminal penalties indicate that Congress intended SEC disgorgement to be civil in nature." Dyer, 908 F.3d at 1002.

### b. Legislative History

Disgorgement was recognized by courts in the 1970s, prior to the existence of civil monetary penalties, as an equitable remedy in civil enforcement actions. See Kokesh, 137 S. Ct. at 1640

16

(citing <u>SEC v. Texas Gulf Sulphur Co.</u>, 312 F. Supp. 77, 91 (S.D.N.Y. 1970)).  Though the general equitable power granted to courts by statute (on which courts have relied to authorize disgorgement) does not specifically refer to disgorgement, and hence there is no legislative history on that issue, Congress has recognized, albeit in a separate statutory framework, that disgorgement is a remedy in <u>civil</u> enforcement actions.  H.R. Rep. No. 101-616, at 13, 22, 31 (1990) (committee report noting that the Remedies Act authorized "federal courts to order the payment of civil monetary penalties, in addition to disgorgement"); S. Rep. No. 101-337, at 3-4, 8-12, 16, 8 n.7 (1990) (committee report noting that "courts in <u>civil</u> proceedings currently may order disgorgement under their equitable powers") (emphasis added).  It was against this backdrop that, twelve years after that, when it enacted the Sarbanes-Oxley Act in 2002, Congress enacted statutory language recognizing that courts order disgorgement.  Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, § 308, 116 Stat. 745, 784-85 (2002).  That Act, in relevant part, authorized the SEC to create a fund for victims out of court ordered disgorgement and civil penalties and expanded the equitable power of district courts in civil enforcement actions. 15 U.S.C. § 7246(a) (authorizing civil penalties to "become part of a disgorgement fund"); <u>see</u> 15 U.S.C. § 78u(d)(5) ("In any action or proceeding brought or instituted by the Commission under any provision of the securities

17

laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors."). While the Court has already observed that the four statutes, that could have been relied on for the Janus Spectrum disgorgement, do not expressly authorize disgorgement as a method for a court to exercise its equitable power, Congress has recognized, in enacting other statutes, that courts have the power to order disgorgement in civil enforcement actions.

### c. Conclusion for Step One

Step one of the Hudson analysis requires this Court to decide whether the legislature "'indicated either expressly or impliedly a preference for'" the civil or criminal label. Hudson, 522 U.S. at 99 (quoting Ward, 448 U.S. at 248). For the reasons stated above, this Court finds that, with respect to each of the four statutes upon which the Janus Spectrum court could have relied in ordering disgorgement, Congress has impliedly "indicated . . . a preference" for the civil label. Id. (citation and internal quotation marks omitted). Thus, this Court must move to the second step of the Hudson analysis to decide if the "'statutory scheme [is] so punitive either in purpose or effect'" as to 'transform what was clearly intended as a civil remedy into a criminal penalty.'" Hudson, 522 U.S. at 99 (first quoting Ward, 448 U.S. at 248, then quoting Rex Trailer Co. v. United States, 350 U.S. 148, 154 (1956)) (internal citations omitted).

18

## 2. Clearest Proof for Transformation

Below, in the second step, the Court applies the seven factors enumerated in Hudson, as well as other considerations, to determine if the "clearest proof" has been established to transform the civil disgorgement penalty into a criminal penalty that triggers Double Jeopardy. Hudson, 522 U.S. at 100. These factors are "'neither exhaustive nor dispositive.'" Dyer, 908 F.3d at 1002 (quoting Ward, 448 U.S. at 249); see Trogden, 476 F. Supp. 2d at 567 (stating that the test "is not exhaustive and should be applied flexibly"). Only the "clearest proof" will sufficiently "override legislative intent and transform what has been denominated as a civil remedy into a criminal penalty." Hudson, 522 U.S. at 100 (quoting Ward, 448 U.S. at 249) (internal quotation marks omitted).

### a. Affirmative Disability or Restraint

First, the Court looks to "whether the sanction involves an affirmative disability or restraint." Id. at 99 (internal quotation marks omitted). The focus of this factor is whether the penalty approaches "the infamous punishment of imprisonment." Id. at 104 (internal quotations omitted). Monetary penalties, such as the disgorgement imposed on Defendant in Janus Spectrum, do not typically constitute an affirmative disability or restraint. Hudson, 522 U.S. at 104; Simpson v. Bouker, 249 F.3d 1204, 1213 (10th Cir. 2001). Although this Court recognizes that there can be some substantial restrictions on an individual's life when their

19

financial means are reduced (especially in a case like this where the sum of money is large), disgorgement is intended to be limited because it is only meant "to force the defendant into giving up unjust enrichment he received as a result of his illegal activities." SEC v. Gotchey, No. 91-1855, 1992 U.S. App. LEXIS 33647, at *7 (4th Cir. Dec. 28, 1992). Accordingly, evaluation of this factor weighs in favor of the Government because disgorgement does not amount to a sufficient "affirmative disability or restraint" so as to transform an otherwise civil disgorgement penalty into a criminal punishment.

### b. Historically Regarded as Punishment

Second, the Court considers whether disgorgement has, historically, been viewed as a criminal punishment. Monetary penalties have not, historically, been viewed as criminal punishment, as "'the payment of fixed or variable sums of money [is a] sanction which has been recognized as enforceable by civil proceedings since the original revenue law of 1789.'" Hudson, 522 U.S. at 104 (quoting Helvering v. Mitchell, 303 U.S. 391, 399 (1938)) (alteration in original) (emphasis added). Prior to Kokesh, courts in multiple circuits specifically held that disgorgement was not a criminal punishment for Double Jeopardy purposes. See, e.g., United States v. Melvin, 918 F.3d 1296, 1301 (11th Cir. 2017); Van Waeyenberghe, 481 F.3d at 958-59; United States v. Perry, 152 F.3d 900, 904 (8th Cir. 1998); Palmisano, 135

F.3d at 865-66; United States v. Gartner, 93 F.3d 633, 635 (9th Cir. 1996); Bilzerian, 29 F.3d at 696; SEC v. Resnick, 604 F. Supp. 2d 773, 784 (D. Md. 2009). Moreover, in 1998, the Department of Justice issued an opinion, analyzing such case law and concluding that imposing SEC disgorgement and criminal punishment for the same conduct did not violate the Double Jeopardy Clause. Application of the Double Jeopardy Clause to Disgorgement Orders under the Federal Trade Commission Act, 22 Op. O.L.C. 56, 59-60 (1998). Following Kokesh, only a few courts have mentioned disgorgement in the Double Jeopardy context, and, as of the date of this Opinion and Order, the United States Court of Appeals for the Sixth Circuit appears to be the only court to have analyzed in depth whether disgorgement is now a criminal punishment. Dyer, 908 F.3d at 1003-04.[6] In its well-reasoned opinion, the Sixth Circuit found that Kokesh did not modify the years of precedent finding that disgorgement is not a criminal punishment. Id.

Like the defendant in Dyer, the Defendant here argues that Kokesh changes the historical view because disgorgement was found to be a punishment, and therefore a "penalty," for purposes of the use of that word in the statute of limitations at issue. Id. While Defendant is correct that disgorgement may now be regarded

---

[6] Dyer filed a petition for writ of certiorari with the Supreme Court of the United States, but the Supreme Court denied certiorari on April 22, 2019. Dyer, 908 F.3d 995, cert. denied, 587 U.S. __ (April 22, 2019) (No. 18-8436) (order list available at https://www.supremecourt.gov/orders/courtorders/042219zor_9o1b.pdf)

as a type of punishment, for at least <u>certain</u> purposes, <u>Kokesh</u> did not make disgorgement a <u>criminal</u> punishment. <u>Kokesh</u>, 137 S. Ct. at 1643-44. The Supreme Court expressly limited its holding in <u>Kokesh</u> when it stated that "[t]he <u>sole</u> question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitations period." <u>Id.</u> at 1642 n.3 (emphasis added). Defendant's motion asks this Court to reach beyond the express limitations of <u>Kokesh</u> and hold that it overturned years of case law declaring that disgorgement is not a punishment for criminal Double Jeopardy purposes. Accordingly, because <u>Kokesh</u> was expressly limited to the application of 28 U.S.C. § 2462, it did not change the historical view of disgorgement and declare disgorgement to be a criminal punishment. Thus, this factor weighs more in favor of the Government.

### c. Scienter

Third, this Court must decide whether disgorgement only applies upon a finding of scienter; such a finding would make it more likely that the penalty is criminal in nature. Defendant argues that the scienter element is satisfied because the substantive offenses underlying the civil penalties required a finding of scienter.

Although there is no express statutory authority for disgorgement, the authority to order disgorgement necessarily comes from one of two places: either the statutes granting general

22

equitable authority in SEC enforcement actions (15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa) or the statutes granting courts the authority to order injunctions in SEC enforcement actions ((15 U.S.C. § 77t(b) and 15 U.S.C. 78u(d)(1)). Therefore, the Court looks to whether these statutes that authorize disgorgement as an equitable remedy require scienter. See 15 U.S.C. §§ 77t(b), 77v(a), 78aa, 78u(d)(1). The Supreme Court has found that "nothing on the face of [sections 77t(b) and 78u(d)(1)] purports to impose an independent requirement of scienter. And there is nothing in the legislative history of either provision to suggest a contrary legislative intent." Aaron v. SEC, 446 U.S. 680, 701 (1980). Similarly, nothing on the face of sections 77v(a) and 78aa requires a finding of scienter for the Court to exercise its equitable authority. 15 U.S.C. §§ 77v(a), 78aa.

As the statutes do not require a finding of scienter on their face, courts look to whether the substantive statutes and regulations, that formed the basis for the violations, require a finding of scienter. Aaron, 446 U.S. at 689; Dyer, 908 F.3d at 1003; Palmisano, 135 F.3d at 866. This makes sense because, if a penalty can only be imposed upon a violation of a separate substantive provision and that substantive provision requires scienter, then it logically follows that the penalty only applies on a finding of scienter. Dyer, 908 F.3d at 1003; Palmisano, 135 F.3d at 866.

Here, the amended complaint in _Janus Spectrum_ alleged that Defendant violated the following substantive provisions: 15 U.S.C. §§ 77q(a), 77e(a), 77e(c), 78j(a), 78o(a)(1) and 17 C.F.R. § 240.10b-5.[7] Amended Complaint, _Janus Spectrum_, 2018 U.S. Dist. LEXIS 21709 (No. CV-15-609). Only some of these substantive provisions require a finding of scienter. _Aaron_, 446 U.S. at 697 (finding that § 77q(a)(1) required scienter but §§ 77q(a)(2) and 77q(a)(3) did not); _Ernst & Ernst v. Hochfelder_, 425 U.S. 185, 187 (1976) (holding that § 78j(b) and 17 C.F.R. § 240.10b-5 required a finding of scienter). The other substantive provisions do not require scienter to find a violation. _Sec. & Exch. Com. v. Nat'l Exec. Planners, Ltd._, 503 F. Supp. 1066, 1072 (M.D.N.C. 1980) (finding that scienter was not required to find violations under §§ 77e and 78o(a)(1)); _Arthur Lipper Corp. v. SEC_, 547 F.2d 171, 180 (2d Cir. 1976) (holding that scienter is not a necessary element to find a violation of 78o(a)(1)). Because it appears from the _Janus Spectrum_ consent judgment that disgorgement was imposed on Defendant for violations of the substantive provisions that require scienter as well as those that do not, the Court

---

[7] It appears that Defendant's disgorgement was imposed for violations of all of the statutes named in the amended complaint. Amended Complaint, _Janus Spectrum_, 2018 U.S. Dist. LEXIS 21709 (No. CV-15-609). Defendant did not admit or deny such alleged violations, but he agreed that the allegations may be accepted as true for the limited purposes of the civil consent judgment in the _Janus Spectrum_ case and the resulting penalties only. _Id._; _cf._ _SEC v. Metter_, 706 F. App'x 699, 702 (2d Cir. 2017) (explaining how a defendant who entered into a consent judgment with the SEC, which was similar to the one Defendant agreed to in the case before this Court, surrendered his right to contest factual allegations in the complaint on a subsequent motion).

cannot find that the disgorgement judgment at issues applies only on a finding of scienter. Cf. Melvin, 918 F.3d at 1300 (holding that "none of the penalties 'comes into play only on a finding of scienter'" because "[t]he SEC may impose a monetary penalty against a person whom the SEC determines has merely 'violated' the Exchange Act" thus making the disgorgement more likely civil in nature). Therefore, the Court finds that this factor favors the Government because it is less likely that disgorgement may be viewed as criminally punitive without a requirement of scienter.

### d. Traditional Aims of Punishment

Fourth, the Court considers whether the disgorgement ordered in the prior civil enforcement proceeding "promote[s] the traditional aims of punishment - retribution and deterrence." Hudson, 522 U.S. at 99. To argue that this factor now weighs in his favor, Defendant relies on the Supreme Court's recent ruling in Kokesh, which held that "SEC disgorgement is imposed for punitive purposes" because its "'primary purpose . . . is to deter violations of securities laws by depriving violators of their ill-gotten gains." Kokesh, 137 S. Ct. at 1643 (emphasis added). According to the Supreme Court, disgorgement is not imposed to compensate anyone, but "is imposed as a consequence of violating a public law and . . . is intended to deter." Id. at 1644 (emphasis added). Thus, Defendant is correct that disgorgement does serve

the "traditional aims of punishment" and that this factor weighs in his favor.

However, Kokesh does not completely alter the prior Double Jeopardy analysis of this factor because, before Kokesh, multiple courts recognized that disgorgement served some deterrent purpose yet still found that disgorgement was not a criminal punishment. See, e.g., Palmisano, 135 F.3d at 866; Gartner, 93 F.3d at 635. Nevertheless, unlike the Double Jeopardy cases just referenced, Kokesh declared that deterrence is the primary purpose of disgorgement. Kokesh, 137 S. Ct. at 1643. Therefore, Defendant is correct in asserting that Kokesh somewhat altered the analysis of this factor because Kokesh held that disgorgement primarily serves to promote deterrence. In light of this recognition in Kokesh, the Court finds that this factor now weighs more in Defendant's favor than it did under the case law decided prior to Kokesh.

### e. Applies to Criminal Conduct

Fifth, the Court looks to whether the conduct for which the civil penalties were imposed may also be punished criminally because, if it can, it makes it more likely that the civil penalty is intended to punish the criminal conduct. Although the fact that Congress can create both criminal and civil penalties for the same conduct alone is insufficient to transform civil monetary penalties into criminal penalties, if the same conduct can justify the imposition of both a criminal penalty and a civil penalty, the

penalty denominated civil must be looked at more closely to determine if it is intended as criminal. See Hudson, 522 U.S. at 105 (citing United States v. Ursery, 518 U.S. 267, 292 (1996)). Here, disgorgement was imposed for violations of the substantive offenses under 15 U.S.C. §§ 77q(a), 77e(a), 77e(c), 78j(a), 78o(a)(1) and 17 C.F.R. § 240.10b-5, which are also punishable criminally under § 77x (for violations of 15 U.S.C. § 77a et seq.) or § 78ff (for violations under 15 U.S.C. § 78a et seq.).[8] When combined with other Hudson factors, the fact that the securities law violations, for which the Janus Spectrum court ordered disgorgement, may also be punished criminally can show that disgorgement is intended as a criminal punishment as well. Hudson, 522 U.S. at 105. Therefore, this factor slightly favors Defendant because it makes it more likely that the prior penalties imposed on him are criminal.

### f. Alternative Purposes

Sixth, the Court asks whether there are alternative purposes for disgorgement in order to determine whether "the remedies have a clear rational purpose other than punishment." Palmisano, 135 F.3d at 866. If there are no purposes for disgorgement other than punishment, it is more likely the punishment is "so punitive in . . . purpose" that it qualifies as a criminal punishment. Hudson,

---

[8] The only securities violations alleged in the instant criminal action are violations of 15 U.S.C. §§ 77e and 77q and 18 U.S.C. § 371, all of which are punishable under § 77x.

522 U.S. at 99. If disgorgement may be ordered to serve purposes other than punishment, then it is less likely that the disgorgement was only ordered as a criminal punishment. While Kokesh explained that the primary purpose of disgorgement is punishment, it also acknowledged that there are other purposes for disgorgement. Kokesh, 137 S. Ct. at 1643, 1645 (recognizing that disgorgement can be both remedial and punitive). As the Dyer court recognized, "there are 'clear rational purpose[s]' for disgorgement other than punishment." Dyer, 908 F.3d at 1003 (quoting Palmisano, 135 F.3d at 866) (alterations in original). These non-punitive purposes include "ensuring that defendants do not profit from their illegal acts, 'encouraging investor confidence, increasing the efficiency of financial markets, and promoting stability of the securities industry.'" Id. (quoting Palmisano, 135 F.3d at 866); accord Gotchey, 1992 U.S. App. LEXIS 33647, at *7. Therefore, because disgorgement can be imposed for purposes other than punishment, it is more likely that the disgorgement imposed on Defendant is not so punitive that it was meant to punish him criminally. See Palmisano, 135 F.3d at 866. Accordingly, this factor favors the Government.

### g. Excessive in Relation to Alternative Purposes

Seventh, the Court evaluates whether disgorgement is excessive in relation to the alternative purposes noted in the previous factor because disproportionate penalties are more

punitive and, thus, more likely criminal in nature. Disgorgement is meant to be limited to the amount of illegal profits gained by a defendant. See Gotchey, 1992 U.S. App. LEXIS 33647, at *7. Such limitation makes it less likely that disgorgement "will be excessive in relation to Congress's nonpunitive goals." Palmisano, 135 F.3d at 866. Therefore, this factor favors the Government.

### h. Additional Considerations

The purpose of analyzing the factors above is to determine whether they generate the "clearest proof" that disgorgement is "'so punitive either in purpose or effect' as to 'transform what was clearly intended as a civil remedy into a criminal penalty.'" Hudson, 522 U.S. at 99 (first quoting Ward, 448 U.S. at 248, then quoting Rex Trailer Co., 350 U.S. at 154) (internal citations omitted) (emphasis added). Based on the conclusions reached above regarding the seven factors in subsections (a) through (g), this case presents a closer call than it would have before Kokesh.[9] However, these factors are not exhaustive. Dyer, 908 F.3d at 1002 (quoting Ward, 448 U.S. at 249); Trogden, 476 F. Supp. 2d at 567.

---

[9] There are two factors in favor of Defendant ((1) disgorgement serves the traditional aims of punishment and (2) disgorgement applies to criminal conduct), and there are five factors in favor of the Government ((1) there is not an affirmative disability or restraint, (2) disgorgement has not historically been regarded as criminal punishment, (3) disgorgement does not only apply on a finding of scienter, (4) there are alternative purposes to disgorgement, and (5) disgorgement is proportionate to the alternative purposes).

Therefore, the Court takes into account the three additional considerations below to determine whether the "clearest proof" exists to transform disgorgement from civil to criminal.

## 1. Punitive Nature

Kokesh clearly impacted the analysis of the Hudson factors. Most notably, it shifted the "traditional aims of punishment" factor in Defendant's favor. See supra Part III.C.2.d. However, Defendant's argument asks this Court to find that Kokesh did more than just shift one factor in his favor; Defendant asks the Court to find that Kokesh impacted the Hudson analysis to an extent that it made disgorgement so punitive in nature that disgorgement now qualifies as criminal punishment. The question of whether disgorgement is a criminal punishment for Double Jeopardy purposes, as Defendant asks this Court to decide, "is distinct from (although overlapping with) the question of whether [disgorgement] is a penalty rather than a remedy," as the Kokesh Court decided. Saad v. SEC, 873 F.3d 297, 305 (D.C. Cir. 2017) (Kavanaugh, J. concurring) (emphasis added). There is overlap in these questions because both the issue in Kokesh and the issue presented to this Court depend on the punitive nature of disgorgement. See Kokesh, 137 S. Ct. at 1643-44. However, they are distinct issues because they deal with different types of punishments. Kokesh only analyzed whether disgorgement was punitive enough to qualify as a civil penalty for purposes of the

statute of limitations provision at issue there, but the Double Jeopardy analysis asks whether disgorgement is punitive enough to be a criminal punishment.

That distinction is important to the analysis here. There are numerous civil penalties that are punitive but not criminal for Double Jeopardy purposes. See, e.g., Hudson, 522 U.S. at 102 (recognizing that, "even though all civil penalties have some deterrent effect," the punitive nature does not make them criminal punishment); Traficanti v. United States, 227 F.3d 170, 174, 177 (4th Cir. 2000) (finding that a punishment for violating the Food Stamp Act did not constitute a "criminal sanction"); Trogden, 476 F. Supp. 2d at 571 (holding that nonjudicial punishment by the United States Navy did not amount to criminal punishment); Hough v. Mozingo, No. 1:04CV609, 2005 U.S. Dist. LEXIS 42430, at *30-31 (M.D.N.C. Apr. 29, 2005), report and recommendation adopted by Hough v. Monzingo, No. 1:04CV609, 2005 U.S. Dist. LEXIS 42431 (M.D.N.C. Sept. 12, 2005) (holding that a tax imposed on individuals who possessed illegal substances was punitive because it was intended to deter possession, but it did not qualify as criminal punishment). Such is the case with disgorgement as well. While disgorgement may now be considered civilly punitive in nature after the Kokesh decision, the analysis of the Hudson factors above reveals that Kokesh did not render disgorgement so punitive that it became a criminal punishment. Even after Kokesh, the weight of

the factors still favors a finding that disgorgement is not criminally punitive. See Dyer, 908 F.3d at 1003.

## 2. Limited Holding of Kokesh

Also crucial to this Court's decision is the explicitly limited nature of Kokesh,[10] which declared disgorgement a penalty only for the purposes of the statute of limitations in 28 U.S.C. § 2462, and explicitly refers to the penalty as civil. Kokesh, 137 S. Ct. at 1639, 1642 n.3. As the Sixth Circuit explained in its detailed analysis in Dyer:

> It is important to recognize what the Court did not say in Kokesh. The Court did not say that SEC civil disgorgement is a criminal punishment. Nor did it say anything about Double Jeopardy. Defendants ask us to read between the lines in the Kokesh opinion. They assert it should be read broadly to mean that every "penalty" is a "punishment," and in turn that every "punishment" necessarily implicates the Double Jeopardy Clause. This is based on the general language from Kokesh defining "penalty" as a "punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offen[s]e against its

---

[10] The Court notes that the briefing, and oral argument transcript, from Kokesh show that the issue of Double Jeopardy was not expressly before the Court, nor was it something that the Justices addressed during oral argument. See generally, Transcript of Oral Argument, Kokesh, 137 S. Ct. (No. 16-529); Brief of Petitioner, Kokesh, 137 S. Ct. 1635 (No. 16-529); Brief for the Respondent, Kokesh, 137 S. Ct. 1635 (No. 16-529). Additionally, any Double Jeopardy concerns were downplayed by both an amicus brief and comments by counsel early on in oral argument. First, in support of the Petitioner, Kokesh, the Chamber of Commerce of the United States of America filed a brief stating that "civil penalties – the penalties covered by § 2462 – are distinguished from criminal penalties by the fact that they are not 'so punitive' as to be criminal in nature." Brief for the Chamber of Commerce of the United States of America as Amicus Curiae in Support of Petitioner at 5, Kokesh, 137 S. Ct. 1635 (No. 16-529) (emphasis added). Second, during oral argument Kokesh's counsel said that "clearly Section 2462 . . . only applies to civil remedies. The word 'civil' is right there in the statute." Transcript of Oral Argument at 24, Kokesh, 137 S. Ct. (No. 16-529). These statements address the issue of whether disgorgement is civil or criminal, effectively eliminating any concerns the Justices may have had about how the outcome of Kokesh would impact Double Jeopardy.

laws." <u>Id.</u> at 1642 (alteration in original) (quoting <u>Huntington v. Attrill</u>, 146 U.S. 657, 667 (1892)). But even if a civil penalty is a punishment, the Double Jeopardy Clause still allows the successive imposition of some "sanctions that could . . . be described as punishment." <u>Hudson v. United States</u>, 522 U.S. 93, 98-99 (1997) (citation omitted). Rather, only multiple <u>criminal</u> punishments are prohibited. <u>Id.</u> And apart from a single mention of the word "crime," nothing in <u>Kokesh</u> suggests that the Court considered SEC disgorgement to be a criminal punishment. <u>Kokesh</u>, 137 S. Ct. at 1642 (quoting <u>Huntington</u>, 146 U.S. at 667). Therefore, Defendants' broad reading seems improper, especially considering that just four years earlier the Supreme Court analyzed the exact same statute of limitations at issue in <u>Kokesh</u>—28 U.S.C. § 2462—as the "general statute of limitations for civil penalty actions." <u>Gabelli v. SEC</u>, 568 U.S. 442, 444 (2013).

<u>Dyer</u>, 908 F.3d at 1003.

For these reasons, this Court declines to extend the reach of the limited holding in <u>Kokesh</u> to overturn years of case law expressly declaring that disgorgement is civil and, thus, does not trigger Double Jeopardy. <u>See, e.g.</u>, <u>Dyer</u>, 908 F.3d at 1003-04; <u>Van Waeyenberghe</u>, 481 F.3d at 958-59; <u>Perry</u>, 152 F.3d at 904; <u>Palmisano</u>, 135 F.3d at 865-66; <u>cf.</u> Application of the Double Jeopardy Clause to Disgorgement Orders under the Federal Trade Commission Act, 22 Op. O.L.C. 56, 59-60 (1998).

### 3. Waiver

Although the Court declined to deny the motion to dismiss for Double Jeopardy on the basis of the waiver in the consent judgment <u>alone</u>, the Court now factors the waiver into its analysis here because the seven factors from <u>Hudson</u> are not exhaustive. <u>Trogden</u>,

33

476 F. Supp. 2d at 567. Defendant does not contest that he made his waiver knowingly and voluntarily based on the law at the time that he signed the consent judgment in Janus Spectrum. This suggests that Defendant recognized he did not have a viable claim for Double Jeopardy at the time because criminal punishments and SEC disgorgement were often both imposed for the same conduct without violating Double Jeopardy. Because this Court now finds that Kokesh did not substantially alter the law in existence at the time of Defendant's waiver, his argument that such a claim did not exist at the time is weak because his rights did not substantially change with the Kokesh decision. Therefore, though the waiver is not the only basis for the Court's decision to deny the motion to dismiss, it is a factor that the Court finds to weigh against Defendant. Cf. Van Waeyenberghe, 481 F.3d at 958.

### i. Conclusion for Step Two

In step two of the Hudson analysis, the Court must determine whether the civil penalty is actually criminal in nature. Hudson, 522 U.S. at 100. Only the "clearest proof" will sufficiently "override legislative intent and transform what has been denominated as a civil remedy into a criminal penalty." Id. (quoting Ward, 448 U.S. at 249) (internal quotation marks omitted). The seven Hudson factors provide guidance to determine if the "clearest proof" has been established, however they are "'neither exhaustive nor dispositive,'" Dyer, 908 F.3d at 1002 (quoting Ward,

448 U.S. at 249), and they "should be applied flexibly," <u>Trogden</u>, 476 F. Supp. 2d at 567. Synthesizing the factors and additional considerations above, this Court finds that, while <u>Kokesh</u> declared disgorgement a punishment for certain purposes, it did not sufficiently alter the Court's analysis as to whether there exists the clearest proof necessary to "override legislative intent" and transform the civil penalty of disgorgement into a criminal punishment that triggers Double Jeopardy. <u>Hudson</u>, 522 U.S. at 100.

## IV. CONCLUSION

For all the reasons stated, the Court finds that the civil penalty imposed in the <u>Janus Spectrum</u> case does not bar pursuit of the instant criminal action against Defendant. Defendant's motion to dismiss is, therefore, **DENIED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.


/s/ ‎

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 8 , 2019