**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 19-4356**

───────────

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

        v.

DARYL G. BANK,

                    Defendant - Appellant.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Mark S. Davis, Chief District Judge.  (2:17-cr-00126-MSD-LRL-1)

───────────

Argued:  April 30, 2020                 Decided: July 14, 2020

───────────

Before GREGORY, Chief Judge, and DIAZ and THACKER, Circuit Judges.

───────────

Affirmed by published opinion.  Judge Thacker wrote the opinion, in which Chief Judge Gregory joined. Judge Diaz wrote an opinion concurring in the judgment.

───────────

**ARGUED:**  James O. Broccoletti, ZOBY & BROCCOLETTI, PC, Norfolk, Virginia, for Appellant.  Andrew Curtis Bosse, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.  **ON BRIEF:**  G. Zachary Terwilliger, United States Attorney, Alexandria, Virginia, Melissa E. O'Boyle, Assistant United States Attorney, Elizabeth M. Yusi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee.

───────────

THACKER, Circuit Judge:

This appeal presents the purely legal issue of whether disgorgement ordered in a civil Securities and Exchange Commission ("SEC") proceeding constitutes a "criminal penalty" for purposes of the Double Jeopardy Clause, such that an individual cannot be later prosecuted for the conduct underlying the disgorgement.

In April 2015, the SEC initiated enforcement proceedings in the District of Arizona against Daryl G. Bank ("Appellant") for illegitimate investment activities. In 2017, Appellant entered into a consent agreement with the SEC, and the United States District Court for the District of Arizona ultimately held Appellant liable for disgorgement in the amount of $4,494,900.

Shortly thereafter, a grand jury in the Eastern District of Virginia returned an indictment charging Appellant with, inter alia, securities fraud and unlawful sale of securities, based in part on the same conduct underlying the SEC proceeding. Appellant filed a motion to dismiss the indictment, arguing that, pursuant to the Double Jeopardy Clause, he could not be prosecuted for that conduct, as he had already been punished for it. The district court denied the motion.

We join with every other circuit to have decided the issue in holding that disgorgement in an SEC proceeding is not a criminal penalty pursuant to the Double Jeopardy Clause. Therefore, we affirm.

I.

On April 6, 2015, the SEC initiated a civil enforcement action against Appellant and others in the United States District Court for the District of Arizona (the "SEC Action").

2

The complaint alleged, inter alia, that Appellant, through fundraising entities that he owned and operated, offered and sold securities "purporting to raise funds to apply for F[ederal] C[ommunications] C[ommission] licenses." J.A. 21.[1]   According to the complaint, Appellant and others misled investors, assuring them their investment would yield high returns when they sold the Federal Communications Commission licenses to major cellular wireless carriers such as Sprint, but in reality, Appellant and his cohorts knew, or should have known, the licenses could never be sold or leased to any major wireless carriers.  *See id.*

In January 2017, Appellant entered into an agreement with the SEC (the "Consent Agreement"), consenting to judgment being entered against him "[w]ithout admitting or denying the allegations of the [SEC] complaint." J.A. 135.  The Consent Agreement also contained a clause stating that Appellant "waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein." *Id.* at 137.

On February 7, 2018, the United States District Court for the District of Arizona entered a final judgment against Appellant in the SEC Action, holding Appellant civilly liable for a disgorgement of $4,494,900, representing profits gained as a result of the

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. The Federal Communications Commission "issues licenses to use the various frequencies [that comprise the available wireless capacity, or spectrum] throughout the country.  The most common licenses involve transmitting radio, television, and cellular telephone signals on certain frequencies." J.A. 26.

conduct alleged in the SEC complaint; pre-judgment interest in the amount of $802,553; and a civil penalty of $4,494,900, all pursuant to 15 U.S.C. §§ 77t(d), 78u(d)(3).  *See* J.A. 148.  Three months later, on May 25, 2018, a grand jury in the Eastern District of Virginia returned the operative second superseding indictment[2] against Appellant and his codefendants, charging 28 counts of mail fraud, wire fraud, and violations of securities laws.

Appellant filed a motion to dismiss the second superseding indictment.  He argued that a recent Supreme Court case, *Kokesh v. Securities and Exchange Commission*, 137 S. Ct. 1635, 1639 (2017), which held that disgorgement is a "penalty" for purposes of a statute of limitations, rendered his disgorgement a "criminal sanction" for purposes of the Double Jeopardy Clause.  J.A. 110.  The Government responded that *Kokesh* did not address the precise issue at hand, and in any event, Appellant waived his ability to challenge the indictment by agreeing to the Consent Agreement's waiver clause in the SEC Action.

The district court denied the motion to dismiss.  It first concluded the evidence was insufficient to demonstrate that Appellant relinquished a known right in agreeing to the waiver clause in the Consent Agreement.   The district court then held Appellant's disgorgement in the SEC Action did not bar subsequent criminal prosecution for purposes of the Double Jeopardy Clause.

---

[2] The original indictment was returned on August 23, 2017, and a first superseding indictment was returned on April 19, 2018.  The panoply of securities fraud charges at issue here did not appear until the second superseding indictment on May 25, 2018.

Appellant filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. *See Abney v. United States*, 431 U.S. 651, 662 (1977) (concluding, pursuant to the collateral order doctrine, "the courts of appeals may exercise jurisdiction over an appeal from a pretrial order denying a motion to dismiss an indictment on double jeopardy grounds").

II.

We review de novo whether a waiver of one's constitutional rights is valid. *See United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014). We also review de novo questions concerning the Double Jeopardy Clause. *See United States v. Schnittker*, 807 F.3d 77, 81 (4th Cir. 2015).

III.

A.

Waiver

The Government contends that Appellant, in signing the Consent Agreement in the SEC Action, effected a knowing and intelligent waiver of his right to contest a future prosecution on Double Jeopardy grounds. The Consent Agreement provided the following:

> Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the SEC . . . with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. *Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.*

J.A. 137 (emphasis supplied).

5

Defendants are permitted to waive their constitutional right to assert a Double Jeopardy claim. *See Menna v. New York*, 423 U.S. 61, 62–63 n.2 (1975) (per curiam). However, "[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," and courts should "indulge every reasonable presumption against waiver of fundamental constitutional rights," rather than "presume acquiescence in the loss" of such rights. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (internal quotation marks omitted); *see also United States v. Morgan*, 51 F.3d 1105, 1110 (2d Cir. 1995) ("In examining a purported waiver of the double jeopardy right, we must draw all reasonable presumptions against the loss of such a right."). Moreover, the language of the waiver must be "crystal clear." *United States v. Van Waeyenberghe*, 481 F.3d 951, 957 (7th Cir. 2007) (declining to decide Double Jeopardy challenge based on waiver alone, where "the language [in the waiver] does not specifically bar double jeopardy claims in *future* criminal proceedings" (emphasis in original)).

Like the district court, we decline to rely on waiver to dispose of this matter. To begin, here, the waiver does not specifically bar double jeopardy claims in *future* proceedings, or in *criminal* proceedings. *See Van Waeyenberghe*, 481 F.3d at 957. Moreover, the waiver clause in the Consent Agreement purports to waive a challenge to "the imposition of any remedy or civil penalty." J.A. 137. At the time Appellant signed the Consent Agreement, the Supreme Court had not considered disgorgement to be a penalty. But as explained further below, *Kokesh* did just that. Thus, what Appellant's waiver represented at the time of the Consent Agreement changed after *Kokesh*. For these reasons, and because we draw all reasonable presumptions against a waiver of one's

constitutional rights, we decline to rely on the waiver in the Consent Agreement in disposing of this appeal.

B.

Disgorgement as a Civil or Criminal Penalty

Appellant argues he "was subjected to the penalty of disgorgement of millions of dollars for violations of securities laws.  The government now seeks to punish him again for the very same conduct.  This is the very essence of Double Jeopardy."  Appellant's Br. 13 (citations omitted).

The Double Jeopardy Clause provides that no person "shall be . . .  subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  It "prohibits successive governmental criminal prosecutions *and successive governmental punishments* for the same conduct."  *Jones v. Secs. & Exch. Comm'n*, 115 F.3d 1173, 1183 (4th Cir. 1997) (emphasis supplied).   However, the doctrine "does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment.  [It] protects only against the imposition of multiple *criminal* punishments for the same offense."   *Hudson v. United States*, 522 U.S. 93, 98–99 (1997) (emphasis in original) (alterations, citations, and internal quotation marks omitted).  *See also Breed v. Jones*, 421 U.S. 519, 528 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal prosecution."); *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 548–49 (1943) (explaining that only "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional meaning"); *Helvering v. Mitchell*, 303 U.S. 391, 398–99 (1938).

Two Supreme Court cases -- *Kokesh v. Securities and Exchange Commission* and *Hudson v. United States* -- inform our decision as to whether Appellant's disgorgement was a civil penalty, which does not invoke the Double Jeopardy Clause, or a criminal penalty, which does.

1.

*Kokesh v. Securities and Exchange Commission*

In *Kokesh*, the Court was asked to decide whether disgorgement in an SEC enforcement proceeding is considered a "penalty" for purposes of a statute of limitations provision stating, "[A]n action, suit or proceeding for the enforcement of any civil fine, *penalty*, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued."  28 U.S.C. § 2462; *see Kokesh*, 137 S. Ct. at 1645.  The unanimous Court concluded that disgorgement is a penalty for statute of limitations purposes -- and thus, disgorgement actions must be commenced within five years of accrual -- for three reasons.

First, "SEC disgorgement is imposed by the courts as a consequence for violating . . . public laws."  *Kokesh*, 137 S. Ct. at 1643.  A securities violation is "committed against the United States rather than an aggrieved individual."  *Id*.

Second, disgorgement is "imposed for punitive purposes."  *Kokesh*, 137 S. Ct. at 1643.  Indeed, "the primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains," and "[s]anctions imposed for the purpose of deterring infractions of public laws are inherently punitive."  *Id*. (alteration and internal quotation marks omitted).

8

Third and finally, the Court reasoned that in many cases, "disgorgement is not compensatory.  As courts and the Government have employed the remedy, disgorged profits are paid to the district court, and it is within the court's discretion to determine how and to whom the money will be distributed." *Kokesh*, 137 S. Ct. at 1644 (internal quotation marks omitted).  In sum, "SEC disgorgement . . . bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate." *Id*.

However, we must look not only to what *Kokesh* says about disgorgement, but also what it did not say.  *See United States v. Dyer*, 908 F.3d 995, 1001 (6th Cir. 2018) ("It is important to recognize what the Court *did not* say in *Kokesh*." (emphasis in original)).  First, *Kokesh* did not conclude that disgorgement is a *criminal* penalty.  Second, *Kokesh* did not mention the Double Jeopardy Clause.  Its holding was narrowly confined to interpretation of a statute of limitations provision.[3]

2.

### Hudson v. United States

Whereas *Kokesh* provides the "penalty" piece of the puzzle in our Double Jeopardy inquiry, *Hudson* provides the "civil or criminal" piece.  Before and after *Kokesh*, courts

---

[3]  The Supreme Court cautioned, "Nothing in [its] opinion should be interpreted as an opinion on whether courts possess authority to order disgorgement in SEC enforcement proceedings."  *Kokesh*, 137 S. Ct. at 1642 n.3.  However, the Supreme Court recently decided that disgorgement may be ordered as equitable relief in an SEC enforcement action.  *Liu v. Sec. & Exch. Comm'n*, --- S. Ct. ---, 2020 WL 3405845, at *2 (U.S. June 22, 2020).

have routinely relied on the two part test of *Hudson v. United States*, 522 U.S. 93 (1997), to determine whether a sanction is a criminal penalty for purposes of the Double Jeopardy Clause.

*Hudson* instructs that deciding whether a sanction is a criminal or civil penalty requires two steps. First, we begin with construction of the statute from which the penalty stems. At this step, we ask "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson*, 522 U.S. at 99 (internal quotation marks omitted).

Second, even if the legislature "has indicated an intention to establish a civil penalty, we . . . inquire[] further whether the statutory scheme was so punitive either in purpose or effect, as to transform what was clearly intended as a civil remedy into a criminal penalty." *Hudson*, 522 U.S. at 99 (alteration, citation, and internal quotation marks omitted). *Hudson* provided seven factors as "useful guideposts" in this inquiry:

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment -- retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Id*. at 99–100 (alteration and internal quotation marks omitted). Notably, "these factors must be considered in relation to the statute on its face, and *only the clearest proof* will suffice to override legislative intent and transform what has been denominated a civil

remedy into a criminal penalty." *Id.* at 100 (emphasis supplied) (citation and internal quotation marks omitted).

3.

The District Court's Decision

Here, the district court below applied the *Hudson* test to Appellant's disgorgement. At step one (the statutory construction step), the district court recognized that certain statutes authorized the District of Arizona's disgorgement order in the SEC Action. Below, the district court explained,

> Some courts suggest the authority [for disgorgement] comes from the provisions granting general equity jurisdiction in securities law violation cases (15 U.S.C. § 77v(a) and 15 U.S.C. § 78aa). *See, e.g.*, *SEC v. Palmisano*, 135 F.3d 860, 865-66 (2d Cir. 1998); *SEC v. Desai*, 145 F. Supp. 3d 329, 337–38 (D.N.J. 2015) (". . . 15 U.S.C. § 77v(a), and . . . 15 U.S.C. § 78aa[] allow for disgorgement of all profits derived from violating the securities laws."). Other courts suggest disgorgement is an ancillary equitable power available to courts under the statutory provisions that grant courts the authority to issue injunctions in securities law violation cases (15 U.S.C. § 77t(b) and 15 U.S.C. 78u(d)(1)). *See, e.g.*, *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) ("Disgorgement, then, is available simply because the relevant provisions of the Securities Exchange Act of 1934, . . . 15 U.S.C. §§ 78u(d) and (e), vest jurisdiction in the federal courts."); *SEC v. Materia*, 745 F.2d 197, 200–01 (2d Cir. 1984). Which statute actually authorizes disgorgement does not impact the Court's analysis on the issue of whether Congress intended disgorgement to be civil or criminal because, as explained below, the language of each statute impliedly indicates a preference for the civil label.

*United States v. Bank*, 378 F. Supp. 3d 451, 457 (E.D. Va. 2019). Thus, at step one, the district court concluded that Congress had a preference that disgorgement would be a civil

11

penalty. At step two, the district court ticked through the seven factors and found that, on balance, there was no "clear[] proof" sufficient to transform the civil penalty to a criminal one. *Id*. at 460 (quoting *Hudson*, 522 U.S. at 100).

4.

Sister Circuit Decisions

Both before and after *Kokesh*, seven of our sister circuits have held that a disgorgement order is not a criminal penalty subject to the Double Jeopardy Clause. None of our sister circuits has held otherwise. Six of these cases were decided before *Kokesh*. *See United States v. Melvin*, 918 F.3d 1296, 1301 (11th Cir. 2017) ("Melvin has failed to demonstrate with the 'clearest proof' necessary that the penalties [including disgorgement] imposed as a result of his earlier civil and administrative proceedings were so punitive that they must be treated as criminal penalties."); *United States v. Van Waeyenberghe*, 481 F.3d 951, 958–59 (7th. Cir. 2007) (on plain error review, observing Van Waeyenberghe offered "little to no analysis under *Hudson* as to why the injunction, disgorgement, and restitution required of him are anything other than equitable remedies that present no bar to subsequent criminal prosecution"); *United States v. Perry*, 152 F.3d 900, 904 (8th Cir. 1998) (adopting reasoning of *Secs. & Exch. Comm'n v. Palmisano*); *Secs. & Exch. Comm'n v. Palmisano*, 135 F.3d 860, 865–66 (2d Cir. 1998) (applying the *Hudson* test, noting, "the nature of the sanction cannot turn solely on whether the conduct at issue is also a crime, for it is well established that Congress may impose both a criminal and a civil sanction in respect to the same act or omission" (internal quotation marks omitted)); *United States v. Gartner*, 93 F.3d 633, 635 (9th Cir. 1996) (pre-*Hudson*, recognizing that a "deterrent

12

purpose . . . does not automatically convert the penalty into [criminal] punishment" (internal quotation marks omitted)); *Secs. & Exch. Comm'n v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994) (noting the equitable nature of disgorgement, as the court "order[s] [the defendant] to give up only his ill-gotten gains" and "d[oes] not subject him to an additional penalty").[4]

One case -- *United States v. Dyer*, 908 F.3d 995, 1003 (6th Cir. 2018) -- was decided after *Kokesh* and, thus, is most relevant to the case at hand because that court had a chance to analyze *Hudson* against the Supreme Court's declaration that disgorgement is a "penalty." *Dyer* reasoned, "[T]he statement in *Kokesh* that disgorgement is a 'penalty' is not a game changer." *Id. Kokesh*'s holding was "narrow and limited solely to the statute of limitations in 28 U.S.C. § 2462. Nothing from *Kokesh* serves as the 'clearest proof' we require to transform a civil remedy into a criminal punishment for Double Jeopardy purposes." *Id*.

5.

Analysis

As explained below, we conclude that disgorgement in Appellant's SEC proceeding is not a criminal penalty for purposes of the Double Jeopardy Clause, and the district court did not err in denying the motion to dismiss.

---

[4] The Tenth Circuit also rejected a pre-*Hudson* argument that a prosecution after an SEC enforcement action violated the Double Jeopardy Clause, reasoning that the SEC judgment bore a rational relationship to the loss caused by the defendant. *See United States v. Rogers*, 960 F.2d 1501, 1506–07 (10th Cir. 1992).

13

a.

<u>*Hudson* Step One: Legislative Preference?</u>

Applying the *Hudson* two-step test, we first ask "whether the legislature, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Hudson*, 522 U.S. at 99 (internal quotation marks omitted). The question of which statute provides the "penalizing mechanism" does not have a straightforward answer, as Congress does not list disgorgement explicitly as a remedy the SEC can seek for violations of securities laws. But as thoroughly explained by the district court, the authority for district courts to order disgorgement as a remedy stems from a variety of statutes.

The complaint in the SEC Action listed 15 U.S.C. §§ 77t(b), 78u(d), 77v(a), and 78aa as jurisdictional bases, and the District of Arizona's disgorgement order cites specifically to §§ 77t(d) and 78u(d)(3) as bases for the remedy. *See* J.A. 22 (complaint in SEC Action); *id.* at 148 (disgorgement order in SEC Action). Looking to these statutes, they each contemplate the district courts overseeing proceedings and assigning remedies that are civil in nature.

For example, § 77t(d) -- one of the statutes cited as a basis for Appellant's disgorgement -- provides that district courts "shall have jurisdiction to impose, upon a proper showing, a *civil penalty* to be paid by the person who committed such violation." 15 U.S.C. § 77t(d)(1) (emphasis supplied). Furthermore, § 77t(b) contemplates the SEC "transmit[ting] such evidence as may be available concerning such [improper] acts or practices to the Attorney General who may, in his discretion, institute the necessary

14

criminal proceedings under this subchapter."  15 U.S.C. § 77t(b).  The indication that different procedures must occur in order to initiate a criminal matter necessarily implies that an SEC enforcement proceeding over which the district court possesses jurisdiction is the opposite -- that is, civil.

Other statutes give federal courts the power to entertain suits brought by the SEC in equity and grant equitable relief.  "In any action or proceeding brought or instituted by the [SEC] under any provision of the securities laws, the [SEC] may seek, and any Federal court may grant, *any equitable relief* that may be appropriate or necessary for the benefit of investors."  15 U.S.C. § 78u(d)(5) (emphasis supplied).  Recently, the Supreme Court concluded, "[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)."  *Liu v. Sec. & Exch. Comm'n*, --- S. Ct. ---, 2020 WL 3405845, at *2 (U.S. June 22, 2020).  The Court reasoned that disgorgement falls within the "'categories of relief that were typically available in equity,'" as "equity practice long authorized courts to strip wrongdoers of their ill-gotten gains."  *Id.* at *5 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993)).

In addition, the district courts have jurisdiction over "all *suits in equity* and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."  15 U.S.C. § 78aa(a) (emphasis supplied); *see* § 77v(a) ("district courts . . . shall have jurisdiction of offenses and violations under this subchapter. . .  of all *suits in equity* and actions at law brought to enforce any liability or duty created by this subchapter" (emphasis supplied)).

15

The Federal Rules of Civil Procedure make clear that suits in equity are considered civil actions. *See* Fed. R. Civ. P. 2, advisory cmte. n.2 to 1937 amend. ("Reference to actions at law or suits in equity in all statutes should now be treated as referring to the civil action prescribed in these rules."); *Raplee v. United States*, 842 F.3d 328, 332 (4th Cir. 2016) ("The Federal Rules famously abolished distinctions between various types of judicial proceedings -- like the distinction between 'actions at law' and 'suits in equity' -- by announcing that '[t]here shall be one form of action to be known as "civil action."'" (quoting Fed. R. Civ. P. 2 (1938))). Thus, there is strong evidence that Congress, in establishing these equitable penalizing mechanisms, preferred for the remedies created therefrom to be civil in nature.[5]

b.

### *Hudson* Step Two: Clear Proof of Criminal Punishment?

Moving to step two, even though Congress has indicated a preference that disgorgement is civil in nature, if Appellant can demonstrate the "clearest proof" to transform a civil remedy into a criminal punishment, disgorgement may preclude a

---

[5] Appellant believes "disgorgement is not a statutory creation; it is a judicially-created punishment." Appellant's Br. 13. Thus, "the parameters set forth in *Hudson* must be tempered in light of the fact that *Hudson* deals only with *statutory* punishments." *Id.* at 14 (emphasis in original). But Appellant does not explain how the district court should have tempered the parameters of *Hudson*, nor does he explain why a punishment that may be judicially created but nonetheless authorized by statute should not be subject to the *Hudson* test, other than simply stating "there is **no** express authority in any statute that authorizes disgorgement." *Id.* at 15 (emphasis in original).

subsequent prosecution under the Double Jeopardy Clause.  We use the seven *Hudson* factors as "useful guideposts."  522 U.S. at 99.

i.

Factor One: Affirmative Disability or Restraint

The first factor is whether the disgorgement constituted "affirmative disability or restraint."  *Hudson*, 522 U.S. at 104 (internal quotation marks omitted).  *Hudson* compared such disability or restraint as "approaching the 'infamous punishment' of imprisonment." *Id.* (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)).

This factor weighs in favor of disgorgement being a civil penalty.  The order requiring the disgorgement of funds did not result in Appellant's imprisonment, and the amount of disgorgement did not require him to pay anything from his own pocket; [6] he merely had to give up the ill-gotten gains from his fraudulent securities scheme.  *See Melvin*, 918 F.3d at 1300 (rejecting argument that SEC civil penalties constituted an affirmative disability or restraint).[7]

---

[6] The *Liu* Court noted that, by incorporating "longstanding equitable principles into § 78u(d)(5), Congress prohibited the SEC from seeking an equitable remedy in excess of a defendant's net profits from wrongdoing."  2020 WL 3405845, at *8.  Appellant does not challenge the disgorgement award in this case on the ground that it exceeds the net profits he unlawfully gained, nor does he contend it was not "awarded for victims."  *Id.* at *2. Therefore, we save for another day the question of whether a disgorgement award that exceeds the wrongdoer's net profits and/or is not awarded for victims can nonetheless be considered a civil penalty pursuant to the *Hudson* test.

[7] In addition to disgorgement, Appellant also received a civil penalty in the same amount in the SEC Action.  However, he does not challenge the civil penalty as a criminal punishment; he only challenges the disgorgement.

17

ii.

<u>Factor Two: Historically Regarded as Punishment</u>

The second factor is whether disgorgement has historically been regarded as a punishment. *See Hudson*, 522 U.S. at 99. *Hudson* itself explained that "the payment of fixed or variable sums of money is a sanction which has been recognized as enforce[a]ble by civil proceedings since the original revenue law of 1789." *Id.* at 104 (alterations and internal quotation marks omitted). And as the district court explained, "Prior to *Kokesh*, courts in multiple circuits specifically held that disgorgement was not a criminal punishment for Double Jeopardy purposes." *Bank*, 378 F. Supp. 3d at 461 (citing *Melvin*, 918 F.3d at 1301; *Van Waeyenberghe*, 481 F.3d at 958–59; *Perry*, 152 F.3d at 904; *Palmisano*, 135 F.3d at 865–66; *Gartner*, 93 F.3d at 635; *Bilzerian*, 29 F.3d at 696).

*Kokesh* does not throw the balance of this factor in favor of Appellant. First of all, even if a penalty is equivalent to *some kind* of punishment, *Kokesh* did not say it was a criminal punishment. Moreover, the Supreme Court expressly limited its holding in *Kokesh* when it stated, "The *sole* question presented in this case is whether disgorgement, as applied in SEC enforcement actions, is subject to [28 U.S.C] § 2462's limitations period." 137 S. Ct. at 1642 n.3 (emphasis supplied). The Court was not setting out to make a general proclamation that disgorgement was a punishment for all purposes, especially Double Jeopardy purposes.

Thus, the second factor weighs in favor of disgorgement as a civil penalty.

iii.

Factor Three: Scienter

Third, we consider whether disgorgement "comes into play only on a finding of scienter." *Hudson*, 522 U.S. at 99.  Although many of the underlying offenses that lead to the remedy of disgorgement require scienter for the substantive criminal offense, whether a court orders disgorgement is not dependent in and of itself on whether the defendant exhibited scienter.

As mentioned at step one above, there are certain statutes that authorize district courts to fashion the remedy of disgorgement.  But "nothing on the face of [sections 77t(b) and 78u(d)] purports to impose an independent requirement of scienter.  And there is nothing in the legislative history of either provision to suggest a contrary legislative intent." *Aaron v. Secs. & Exch. Comm'n*, 446 U.S. 680, 701 (1980).  Likewise, nothing on the face of the other statutes mentioned above purport to require scienter before a district court may order disgorgement.

The third factor weighs in favor of disgorgement as a civil penalty.

iv.

Factor Four: Retribution and Deterrence

The fourth factor to consider is whether the disgorgement ordered in the prior civil enforcement proceeding "promote[s] the traditional aims of punishment -- retribution and deterrence." *Hudson*, 522 U.S. at 99.

*Kokesh* tilts this factor in Appellant's favor.  *Kokesh* specifically stated that "SEC disgorgement is imposed for punitive purposes" because its "primary purpose . . . is *to*

19

*deter* violations of the securities laws by depriving violators of their ill-gotten gains." 137 S. Ct. at 1643 (emphasis supplied) (internal quotation marks omitted). Disgorgement "is imposed as a consequence of violating a public law and . . . is intended *to deter*." *Id*. at 1644 (emphasis supplied). Further, the Court explained, "disgorgement orders go beyond compensation, are intended to punish, and label defendants wrongdoers as a consequence of violating public laws." *Id*. at 1645 (internal quotation marks omitted). Because of this strong language from the Supreme Court, the fourth factor weighs in favor of disgorgement as a criminal penalty.

v.

### Factor Five: Behavior that is Already a Crime

Fifth, we ask whether the behavior to which the disgorgement applies "is already a crime." *Hudson*, 522 U.S. at 99. This factor, too, weighs in favor of Appellant. Here, although Appellant did not admit to the allegations in the SEC complaint, the disgorgement order also enjoined Appellant from committing violations of the substantive offenses set forth in 15 U.S.C. §§ 77q(a), 77e, 78j(b), and 78o(a), and 17 C.F.R. § 240.10b-5. These offenses are also punishable as crimes under § 77x (applying to violations of 15 U.S.C. § 77a–77aa) or § 78ff (applying to violations under 15 U.S.C. § 78a–78qq).

vi.

### Factor Six: Alternative Purpose

Sixth, we ask if there is "an alternative purpose to which [disgorgement] may rationally be connected," *Hudson*, 522 U.S. at 99, in order to determine whether the

"remed[y] ha[s] a clear rational purpose other than punishment," *Palmisano*, 135 F.3d at 866.

*Kokesh* resolves this factor in favor of the Government.  There, the Court explained that although the *primary* purpose of disgorgement is punishment, there are other purposes as well.  137 S. Ct. at 1643, 1645 (recognizing that disgorgement can be both remedial and punitive).  As *Dyer* recognized, "there are 'clear rational purposes' for disgorgement other than punishment." 908 F.3d at 1003 (quoting *Palmisano*, 135 F.3d at 866) (alteration omitted).  These nonpunitive purposes include "ensuring that defendants do not profit from their illegal acts, 'encouraging investor confidence, increasing the efficiency of financial markets, and promoting stability of the securities industry.'"  *Id*. (quoting *Palmisano*, 135 F.3d at 866); *see also Secs. & Exch. Comm'n v. Cavanagh*, 445 F.3d 105, 117 (2d Cir. 2006) ("[T]he primary purpose of disgorgement is not to compensate investors.  Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched.  The emphasis on public protection, as opposed to simple compensatory relief, illustrates the equitable nature of the remedy." (citation and internal quotation marks omitted)).

Therefore, this factor weighs in favor of disgorgement as a civil penalty.

vii.

Factor Seven: Excessive in Relation to Alternative Purpose

Finally, we ask whether disgorgement "appears excessive in relation to the alternative purpose assigned." *Hudson*, 522 U.S. at 99–100.  This factor weighs in favor of disgorgement as a civil penalty.  Disgorgement is meant to be limited to the amount of

illegal profits gained by a defendant, and as such, it is less likely that disgorgement "will be excessive in relation to Congress's nonpunitive goals."  *Palmisano*, 135 F.3d at 866.

c.

*Kokesh*'s Effect on *Hudson*

Appellant contends that, while *Hudson* "provides a useful starting point," it "must be read in conjunction with *Kokesh*."  Appellant's Br. 14.  Appellant admits that *Kokesh* did not go so far as to declare disgorgement a criminal penalty for purposes of Double Jeopardy.  But he insists, "While the lower court is correct that the question of whether disgorgement is a punishment for Double Jeopardy purposes was not before the Supreme Court in *Kokesh*, the Supreme Court could not have been more direct in its holding and the implication is unmistakable [that disgorgement is a Double Jeopardy punishment]."  *Id.* at 8.  Appellant believes *Kokesh* "represents a substantial change from prior case law.  In both its holding and analysis[,] the Court fundamentally altered the definition of what constitutes a punishment."  *Id.*

However, as the district court observed, "[Appellant's] motion asks this Court to reach beyond the express limitations of *Kokesh* and hold that it overturned years of case law declaring that disgorgement is not a punishment for criminal Double Jeopardy purposes."  *Bank*, 378 F. Supp. at 462.  Accordingly, "because *Kokesh* was expressly limited to the application of 28 U.S.C. § 2462, it did not change the historical view of disgorgement and declare disgorgement to be a criminal punishment."  *Id.*  As explained above, although *Kokesh* tipped two of the *Hudson* factors in favor of Appellant, it did not

22

go so far as to provide the "clear[] proof" Appellant needs for his motion to dismiss to succeed. *Hudson*, 522 U.S. at 100.

d.

Conclusion

For these reasons, the balance of the factors weighs in favor of deeming disgorgement a civil penalty. Again, *Hudson* directs that we must find the "clearest proof" that the civil penalty is actually meant to be criminal in nature. 522 U.S. at 100. An analysis of the seven *Hudson* factors demonstrates the proof here is far from clear. Therefore, we hold that disgorgement is a civil penalty, and it does not fit within the parameters of the Double Jeopardy Clause.

IV.

For the reasons set forth above, the judgment of the district court is

*AFFIRMED*.

23

DIAZ, Circuit Judge, concurring in the judgment:

I have no quarrel with the majority's conclusion that disgorgement is a civil penalty for purposes of the Double Jeopardy Clause. But I find it unnecessary to decide that question, as I believe that the Consent Agreement contains a valid waiver of Bank's right to assert a double jeopardy claim in this criminal proceeding.

As the majority rightly observes, we "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (cleaned up). But this waiver clause invites no such reasonable presumptions. When Bank entered into the Consent Agreement with the SEC, he "waive[d] any claim of Double Jeopardy based upon the settlement of [the] proceeding, including the imposition of any remedy or civil penalty [t]herein." J.A. 137. On its face, then, the clause forfeits Bank's right to bring the present claim: a "claim of Double Jeopardy based upon . . . the imposition of . . . [a] remedy or civil penalty" pursuant to the SEC proceeding. *Id.*

My colleagues nonetheless find the waiver to be ambiguous. In particular, they would require Bank to have explicitly waived the right to bring a double jeopardy claim in *future criminal* proceedings. But double jeopardy claims *necessarily* involve future criminal proceedings. *See Hudson v. United States*, 522 U.S. 93, 99 (1997) ("The [Double Jeopardy] Clause protects only against the imposition of multiple *criminal* punishments for the same offense, and then only when such occurs in successive proceedings." (cleaned up)). Failure to include such surplusage doesn't render the waiver clause ambiguous.

Nor am I persuaded by the majority's observation that "[a]t the time [Bank] signed the Consent Agreement, the Supreme Court had not considered disgorgement to be a

24

penalty."  Maj. Op. 6.  As my colleagues correctly note elsewhere in their opinion, *Kokesh* was "narrowly confined to interpretation of a statute of limitations provision."  Maj. Op. 9. *Kokesh* did not, then, broadly redefine the meaning of either "penalty" or "disgorgement" as contemplated by the waiver.  And even if it did, Bank *also* waived the right to bring a double jeopardy claim based on the imposition of "*any remedy*."  J.A. 137 (emphasis added).  Regardless of its effect on the definition of "penalty," *Kokesh* certainly had no effect on disgorgement's longstanding status as a "remedy."  *See Kokesh v. SEC*, 137 S. Ct. 1635, 1643 (2017) (referring, without comment, to SEC disgorgement as a "remedy").

\* \* \*

In sum, Bank waived the right to assert a double jeopardy claim in this case.  On that ground alone, I would affirm the district court's judgment.