```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF VIRGINIA
 2                        Norfolk Division

 3
   - - - - - - - - - - - - - - - - - -
 4                                     )
      UNITED STATES OF AMERICA         )
 5                                     )
      v.                               )      CRIMINAL ACTION NO.
 6                                     )           2:17cr126
      DARYL G. BANK and                )
 7    BILLY J. SEABOLT,                )
                                       )
 8           Defendants.               )
                                       )
 9 - - - - - - - - - - - - - - - - - -

10                    ** JURY TRIAL - DAY 19 **

11                EXCERPT TRANSCRIPT OF PROCEEDINGS
                         (Jury Instructions)
12
                       Norfolk, Virginia
13
                       April 29, 2021
14

15
   BEFORE:  THE HONORABLE RAYMOND A. JACKSON, and a jury
16           United States District Judge

17
   APPEARANCES:
18
              UNITED STATES ATTORNEY'S OFFICE
19            By:  Andrew C. Bosse
                   Melissa E. O'Boyle
20                 Elizabeth M. Yusi
                   Assistant United States Attorneys
21                 Counsel for the United States

22            ZOBY & BROCCOLETTI
              By:  James O. Broccoletti
23                 Counsel for Defendant Daryl G. Bank

24            EMILY M. MUNN, P.C.
              By:  Emily M. Munn
25                 Counsel for Billy J. Seabolt
```

```
 1                        * * * * * * *

 2              (The jury entered the courtroom.)

 3              THE COURT:  Good morning, ladies and gentlemen.

 4              Let the record reflect that all the jurors are

 5    present this morning.  Does counsel agree?

 6              MS. O'BOYLE:  Yes, Your Honor.

 7              MR. BROCCOLETTI:  Yes, sir.

 8              MS. MUNN:  Yes, Your Honor.

 9              THE COURT:  Ladies and gentlemen, you have heard the

10    evidence in this case.  You have heard the closing arguments,

11    and now you are at the point where you will receive

12    instructions from the Court about what law you will apply to

13    these facts in reaching your verdict.

14              Now, the Court will be reading you instructions.

15    These instructions are indexed, double-spaced, capitalized,

16    and numbered, so you can go back and check any instruction

17    the Court reads to you, if you have any issues in the jury

18    room.

19              At the end of the reading, the jury instructions

20    will be given to you, along with the exhibits, and you will

21    be able to retire to the jury room to deliberate.  When the

22    Court finishes the instructions, it will be excusing four of

23    you, because only 12 can deliberate.

24              But while I excuse four of you, you cannot discuss

25    this case or do anything until a verdict has been returned.
```

1   So you may go home, but you are going to have to check to see

2   if a verdict has come in, because if we have an emergency, it

3   may be necessary to recall one of the four who has been

4   excused to participate in deliberations.

5          So remember, do not discuss the case if you are

6   among those who are excused until you've checked with the

7   clerk to be sure this case has been concluded.

8          With that, we're going to get started with these

9   instructions.  It will probably take about an hour, maybe an

10  hour and 15 to read all of this, but the law requires that I

11  read it to you.  So please listen, and you will be in good

12  shape.

13         Now that you've heard all of the evidence, it is my

14  duty to give you the instructions of the Court concerning the

15  law applicable to this case.

16         It is your duty as jurors to follow the law as the

17  Court shall state it to you and apply the law to the facts as

18  you find them from the evidence in the case.

19         Now, ladies and gentlemen, counsel may quite

20  properly have referred to some of the governing rules of law

21  in their arguments.  If, however, any difference appears to

22  you between the law as stated by counsel and that stated by

23  the Court in these instructions, you, of course, are to be

24  governed by the instructions as given by the Court.

25         You are not to single out one instruction alone as

1    completely stating the law but must consider the instructions
2    as a whole.  Neither are you to be concerned with the wisdom
3    of any rules of law stated by the Court.
4                Regardless of any opinion you may have as to what
5    the law is or ought to be, it would be a violation of your
6    sworn duty to base a verdict upon any view of the law other
7    than that given in the instructions of the Court, just as it
8    would also be a violation of your sworn duty as judges of the
9    facts to base a verdict upon anything other than the evidence
10   in the case.
11               In deciding the facts of this case, you must not be
12   swayed by sympathy for any party nor bias or prejudice or
13   favor as to any party.  Our system of law does not permit
14   jurors to be governed by prejudice, sympathy, bias,
15   guesswork, or speculation.
16               Justice through trial by jury must always depend
17   upon the willingness of each individual juror to seek the
18   truth as to the facts from the same evidence presented to all
19   the jurors and to arrive at a verdict by applying the same
20   rules of law as given in the instructions of the Court.
21               This is Instruction Number 2:
22               The evidence in this case consists of the sworn
23   testimony of the witnesses, regardless of who may have called
24   them; all exhibits received in evidence, regardless of who
25   may have produced them; and all facts which have been

1   admitted or stipulated.

2        Statements and arguments of counsel are not evidence

3   in the case unless made as an admission or stipulation of

4   fact.  Now, when the attorneys on both sides stipulate or

5   agree as to the existence of a fact, however, you must,

6   unless otherwise instructed, accept the stipulation as

7   evidence and regard that fact as proved.

8        And there were stipulations in this case, and the

9   Court did not instruct you to disregard any stipulation.

10        Any evidence as to which an objection was sustained

11   by the Court and any evidence ordered stricken by the Court

12   must be entirely disregarded.

13        Anything you may have seen or heard outside the

14   courtroom is not evidence.  It must be entirely disregarded.

15        You are to consider only the evidence in the case.

16   In your consideration of the evidence, however, you are not

17   limited to the bald statements of the witnesses.  In other

18   words, you are not limited solely to what you see and hear as

19   the witnesses testify.  You are permitted to draw, from facts

20   that you find have been proved, such reasonable inferences

21   you feel are justified in light of experience.

22        Instruction Number 3:  Recordings of conversations

23   have been received in evidence and have been played for you.

24   Typewritten transcripts of these recorded conversations have

25   been furnished to you solely for your convenience in

1   assisting you in following the conversation or in identifying

2   the speakers.

3            Number 4:  A separate crime is charged in each count

4   of the indictment.  Each charge and the evidence pertaining

5   to it should be considered separately by the jury.  The fact

6   that you may find a defendant guilty or not guilty as to one

7   of the offenses charged should not control your verdict as to

8   any other offense charged.

9            Instruction Number 5:  You heard evidence that

10  Raeann Gibson and Roger Hudspeth pleaded guilty to charges

11  arising from the events that are the subject of this trial.

12  You must not consider Raeann Gibson and Roger Hudspeth's

13  guilty pleas as any evidence of the defendants' guilt.

14  Raeann Gibson and Roger Hudspeth's decisions to plead guilty

15  were personal decisions about their own guilt.  You should

16  disregard Raeann Gibson and Roger Hudspeth's guilty pleas

17  completely when considering the defendants' guilt or

18  innocence.

19            You should gave such testimony the weight you

20  believe it deserves, keeping in mind that it must be

21  considered with caution and great care.

22            Instruction number 6:  So while you should consider

23  only the evidence in the case, ladies and gentlemen, you are

24  permitted, again, to draw such reasonable inferences from the

25  testimony and exhibits as you feel are justified in light of

1    common experience.  In other words, you may make deductions

2    and reach conclusions which reason and common sense lead you

3    to draw from the facts which have been established by the

4    testimony and evidence in the case.

5            You may also consider direct and circumstantial

6    evidence.  As I told you in the beginning, direct evidence is

7    the testimony of one who asserts actual knowledge of a fact,

8    such as an eyewitness.  And circumstantial evidence is proof

9    of a chain of facts and circumstances indicating either the

10   guilt or the innocence of the defendant.

11           The law makes no distinction between the weight to

12   be given either direct or confidential evidence.  It requires

13   only that you weigh all of the evidence and be convinced of

14   the defendant's guilt beyond a reasonable doubt before he can

15   be convicted.

16           Instruction Number 7:  There are people whose names

17   you have heard during the trial but who did not appear to

18   testify.  You should not speculate as to what those people

19   would have testified to had they been called.  Their absence

20   should not affect your judgment in any way.  You should keep

21   in mind my instruction, however, that the law does not impose

22   on a defendant the burden or duty of calling any witnesses or

23   producing any evidence.  It is the government's burden to

24   prove beyond a reasonable doubt each element of the crimes

25   charged in the indictment.

1          Speaking of the indictment, Instruction Number 8, I

2    instruct you that you must presume the defendants to be

3    innocent of the crimes charged.  Thus, the defendants,

4    although accused of a crime in the indictment, begin the

5    trial with a clean slate -- with no evidence against them.

6          The indictment, as you already know, is not evidence

7    of any kind.  The defendants are, of course, not on trial for

8    any act or crime not contained in the indictment.  The law

9    permits nothing but legal evidence presented before the jury

10   in court to be considered in support of any charge against

11   the defendant.  The presumption of innocence alone,

12   therefore, is sufficient to acquit the defendant.

13         The burden is always upon the prosecution to prove

14   guilt beyond a reasonable doubt.  This burden never shifts to

15   a defendant for the law never imposes upon a defendant in a

16   criminal case the burden of calling any witnesses or

17   producing any evidence.  The defendant is not even required

18   or obligated to produce any evidence by cross-examining the

19   witnesses for the government.

20         It is not required that the government prove guilt

21   beyond all possible doubt.  The test is one of reasonable

22   doubt.  Unless the government proves beyond a reasonable

23   doubt that a defendant has committed each and every element

24   of an offense charged in the indictment, you must find the

25   defendants not guilty of the offense.

1          Now, if the jury views the evidence in the case as

2     reasonably permitting either of two conclusions -- one of

3     innocence, the other of guilt -- the jury must, of course,

4     adopt the conclusion of innocence.

5          Instruction Number 9:  We had an expert witness in

6     here.  The Rules of Evidence ordinarily do not permit

7     witnesses to testify as to their own opinions or their own

8     conclusions about important questions in a trial.  An

9     exception to this rule exists to those persons who are

10    described as expert witnesses.

11         An expert witness is someone who, by education or by

12    experience, may have become knowledgeable in some technical

13    or scientific or very specialized area.  If such knowledge or

14    experience may be of assistance to you in understanding some

15    of the evidence or in determining a fact, an expert witness

16    in that area may state an opinion as to a matter in which he

17    or she claims to be an expert.

18         Now, you should consider each expert opinion

19    received in evidence in this case and give it such weight, if

20    any, as you may think it deserves.  You should consider the

21    testimony of expert witnesses just as you consider other

22    evidence in this case.  If you should decide that the opinion

23    of an expert witness is not based upon sufficient education

24    or experience, if you should conclude that the reasons given

25    in support of the opinion are not sound, or if you should

1   conclude that the opinion is outweighed by other evidence,

2   you may disregard the opinion in part or in its entirety.

3           As I've told you several times, the jury is the sole

4   judges of the facts of this case.

5           Number 10:  The government has presented exhibits in

6   the form of charts and summaries.  You should consider these

7   charts and summaries as you would any other evidence in the

8   case.

9           Now, Number 11 is an instruction I gave you in the

10  beginning of this case, and that has to do with credibility

11  of the witnesses.

12          You, as the jurors, are the sole judges of the

13  credibility of the witnesses and the weight their testimony

14  deserves.  You may be guided by their appearance and conduct

15  of the witness, or by the manner in which the witness has

16  testified, or by the character of the testimony given, or by

17  evidence to the contrary of the testimony given.

18          You should carefully scrutinize all the testimony

19  given, the circumstances under which each witness has

20  testified, and every matter in evidence that tends to show

21  whether the witness is worthy of belief.  Consider each

22  witness's intelligence, motive and state of mind, and

23  demeanor or manner while on the stand.  Consider the

24  witness's ability to observe the matters as to which he or

25  she has testified and whether he or she impresses you as

1    having an accurate recollection of these matters.

2         Consider also any relation each witness may bear to

3    either side of the case, the manner in which each witness

4    might be affected by the verdict, and the extent to which, if

5    at all, each witness is either supported or contradicted by

6    other evidence in the case.

7         Inconsistencies or discrepancies in the testimony of

8    a witness, or between the testimony of different witnesses,

9    may or may not cause you, as jurors, to discredit such

10   testimony.  Two or more persons witnessing an incident or

11   transaction may see or hear it differently.  An innocent

12   misrecollection, like a failure of recollection, is not an

13   uncommon experience.

14        In weighing the effect of a discrepancy, always

15   consider whether it pertains to a matter of importance or an

16   unimportant detail and whether the discrepancy results from

17   innocent error or intentional falsehood.

18        After making your own judgment, you are to give the

19   testimony of each witness such weight, if any, as you think

20   it deserves.  You may, in short, accept or reject the

21   testimony of any witness in whole or in part.

22        Also, the weight of the evidence is not necessarily

23   determined by the number of witnesses testifying to the

24   existence or the nonexistence of any fact.  You may find that

25   the testimony of a small number of witnesses as to any fact

1    is more credible than the testimony of a large number of

2    witnesses to the contrary.

3         My next instruction has to do with credibility of

4    one convicted of a felony.

5         The testimony of a witness may be discredited or

6    impeached by evidence showing that the witness has been

7    convicted of a felony, a crime for which a person may receive

8    a prison sentence of more than a year.

9         Prior conviction of a crime that is a felony is one

10   of the circumstances which you may consider in determining

11   the credibility of that witness.

12        It is the sole and exclusive right of the jury to

13   determine the weight to be given to any prior conviction as

14   impeachment and the weight to be given to the testimony of

15   anyone who has previously been convicted of a felony.

16        Instruction Number 13 pertains to use of testimony

17   by those who have entered into plea agreements.

18        In this case, the government called as witnesses

19   alleged accomplices, with whom the government had entered

20   into plea agreements providing for the dismissal of some

21   charges.  Such plea bargaining, as it is called, is common

22   and has been approved as lawful and proper, and is expressly

23   provided for in the rules of this court.

24        An alleged accomplice, including one who has entered

25   into a plea agreement with the government, does not thereby

1    become incompetent as a witness.  On the contrary, the

2    testimony of such a witness may alone be of sufficient weight

3    to sustain a verdict of guilty.  However, the jury should

4    keep in mind that such testimony is always received with

5    caution and weighed with great care.

6         You should never convict a defendant upon the

7    unsupported testimony of an alleged accomplice unless you

8    believe that testimony beyond a reasonable doubt; and the

9    fact that an accomplice has entered a plea of guilty to the

10   offense charged is not evidence, in and of itself, of the

11   guilt of any other person.

12        We have had a law enforcement witness in this case.

13   You have heard the testimony of law enforcement officers, or

14   officer.  The fact that a witness may be employed as a law

15   enforcement officer does not mean that his or her testimony

16   is necessarily deserving of more or less consideration or

17   greater or lesser weight than that of an ordinary witness.

18        At the same time, it is quite legitimate for defense

19   counsel to try to attack the testimony of a law enforcement

20   witness on the grounds that his or her testimony may be

21   colored by a personal or professional interest in the outcome

22   of the case.

23        It is your decision, after reviewing all the

24   evidence, whether to accept the testimony of the law

25   enforcement witness and to give that testimony whatever

1   weight, if any, you think it deserves.

2          Instruction Number 15 deals with the credibility of

3   the witnesses with respect to inconsistent statements.

4          A witness may be discredited or impeached by

5   contradictory evidence or by evidence that at some other time

6   the witness has said or done something or has failed to say

7   or do something which is inconsistent with the witness's

8   present testimony, that is, the testimony here in court.

9          If you believe that a witness has been impeached and

10  thus discredited, it is your exclusive province to give the

11  testimony of that witness such credibility, if any, as you

12  think it deserves.

13         If a witness is shown knowingly to have testified

14  falsely concerning any material matter, you have a right to

15  distrust such testimony in other particulars, and you may

16  reject all the testimony of that witness or give it such

17  credibility as you think it deserves.

18         Instruction Number 16, the defendant as a witness:

19         You should judge the testimony of the defendant in

20  the same manner as you judge the testimony of any other

21  witness in the case.

22         Several terms are used in the indictment, ladies and

23  gentlemen.  Those terms being "on or about," "knowingly,"

24  "willfully."  So we will define those terms.

25         Instruction Number 17, "On Or About":  You will note

1   that the indictment charges that the offense was committed

2   "on or about" a certain date.  The proof need not establish

3   with certainty the exact date of the alleged offense.  It is

4   sufficient that the evidence in the case establishes beyond a

5   reasonable doubt that the offense was committed on a date

6   reasonably near the date alleged.

7            Instruction Number 18, "Knowingly":  The word

8   "knowingly" means that the act was done voluntarily and

9   intentionally and not because of mistake or accident.

10           Instruction number 19, "Willfully."  The term

11  "willfully," as used in these instructions to describe the

12  alleged state of mind of the defendant, means that he

13  knowingly performed an act, deliberately and intentionally on

14  purpose, as contrasted with accidentally, carelessly, or

15  unintentionally.

16           Instruction Number 20 deals with the issue of

17  motive.  Intent and motive are different concepts and should

18  never be confused.  Motive is what prompts a person to act or

19  to fail to act.  Intent refers only to the state of mind with

20  which the act is done or omitted.

21           Personal advancement and financial gain, for

22  example, are two well-recognized motives for much of human

23  conduct.  These motives, however, may prompt one person to

24  voluntary acts of good while prompting another person to

25  voluntary acts of crime.  Good motive alone is never a

1   defense where the act done or omitted is a crime.  The motive

2   of the defendants is, therefore, immaterial except insofar as

3   the evidence of motive may aid the determination of the state

4   of mind or the intent of an individual.

5          Number 21, how to prove intent:  The intent of a

6   person or the knowledge that a person possesses at any given

7   time may not ordinarily be proved directly because there is

8   no way of scrutinizing the workings of the human mind.  In

9   determining the issue of what a person knew or what a person

10  intended at a particular time, you may consider any

11  statements made or acts done or omitted by that person and

12  all other facts and circumstances received in evidence which

13  may aid in your determination of that person's knowledge or

14  intent.

15         You may infer, but you are certainly not required to

16  infer, that a person intends the natural and probable

17  consequences of acts knowingly done or knowingly omitted.  It

18  is entirely up to you, however, to decide what facts to find

19  from the evidence received during this trial.

20         Number 22 is something called 404(b) evidence.  You

21  may have heard evidence that the defendant or the defendants

22  committed certain acts that may be similar to the acts

23  alleged or charged in the Second Superseding Indictment.  You

24  may not consider this evidence in deciding if the defendant

25  committed the acts charged in the Second Superseding

1    Indictment.

2          However, you may consider this evidence for other,

3    very limited purposes, such as the following:  to prove that

4    the defendant had motive or the opportunity to commit the

5    crime charged in the Second Superseding Indictment; to prove

6    that the defendant had the state of mind or the intent

7    necessary to commit the crimes charged in the Second

8    Superseding Indictment; to prove that the defendant acted

9    according to a plan or in preparation to commit the crimes

10   charged in the Second Superseding Indictment; to prove that

11   the defendant knew what he was doing when he committed the

12   crimes charged in the Second Superseding Indictment; or to

13   prove that the defendant did not commit the crimes in the

14   Second Superseding Indictment by mistake or by accident.

15         Do not conclude from this evidence that the

16   defendant has bad character in general or that because the

17   defendant may have committed other similar acts that it's

18   more likely that he committed the crimes with which he is

19   currently charged.

20         Now, I made reference to the Second Superseding

21   Indictment.  I don't want to confuse you.  This is the Second

22   Superseding Indictment before the Court.  We are simply

23   referring to the charges before the Court, the indictment

24   before the Court.

25         Number 23, the relationship between violations of

civil regulations and violations of criminal law:

Evidence has been received in this case that certain regulatory statutes may have been violated during the time alleged in the indictment.  Although violations of regulatory statutes may not be considered by you as violation of criminal law, evidence of violations of civil statute may be considered by you as any other evidence in determining whether the defendant had the required knowledge and intent to violate the criminal law.

Number 24, good-faith defense:  Good faith is a complete defense to a charge that requires intent to defraud. A defendant is not required to prove good faith.  The government must prove intent to defraud beyond a reasonable doubt.

An honestly held opinion or an honestly formed belief cannot be fraudulent intent, even if the opinion or the belief is mistaken.  Similarly, evidence of a mistake in judgment, an error in management, or carelessness cannot establish fraudulent intent.

However, an honest belief that a business venture would ultimately success does not constitute good faith if the defendant intended to deceive others by making representations that the defendant knew to be false or fraudulent.

The next instruction deals with reliance on counsel,

1    good-faith reliance on counsel:

2           Good faith, as I said, is a complete defense to the

3    charge in the indictment because the government must prove

4    beyond a reasonable doubt that the defendants acted with

5    intent to defraud.  Evidence that the defendant in good faith

6    followed the advice of counsel would be inconsistent with

7    such an unlawful intent.

8           The defendant offered evidence of his reliance upon

9    the advice of counsel.  Unlawful intent has not been proved

10   if the defendant, before acting:  made a full and complete

11   good-faith report of all material facts to an attorney that

12   he considered competent; received the attorney's advice as to

13   the specific course of conduct that was followed; and

14   reasonably relied upon that advice in good faith.

15          Instruction Number 26 deals with "Deliberate

16   Ignorance."  The government may prove that the defendants,

17   Daryl Bank and Billy J. Seabolt, acted knowingly by proving

18   beyond a reasonable doubt that these defendants deliberately

19   closed their eyes to what would otherwise have been obvious

20   to them.  No one can avoid responsibility for a crime by

21   deliberately ignoring what is obvious.  A finding beyond a

22   reasonable doubt of an intent of defendants Daryl Bank and

23   Billy J. Seabolt to avoid knowledge or enlightenment would

24   permit the jury to find knowledge.  Stated another way, a

25   person's knowledge of a particular fact may be shown from a

 1  deliberate or intentional ignorance or a deliberate or

 2  intentional blindness to the existence of that fact.

 3          It is, of course, entirely up to you as to whether

 4  you find any deliberate ignorance or deliberate closing of

 5  the eyes and any inferences to be drawn from such evidence.

 6          You may not conclude that the defendants Daryl Bank

 7  and Billy J. Seabolt had knowledge, however, from proof of a

 8  mistake, negligence, carelessness, or a belief in an

 9  inaccurate proposition.

10          Now, the next instruction deals with ignorance of

11  the law, Instruction Number 27.

12          It is not necessary for the prosecution to prove

13  defendants Daryl Bank and Billy J. Seabolt knew that a

14  particular act or failure to act is a violation of law.

15  Unless and until outweighed by the evidence in the case to

16  the contrary, the presumption is that every person knows what

17  the law forbids and what the law requires to be done.

18          "False Exculpatory Statements."  This is Instruction

19  Number 28:

20          Statements knowingly and voluntarily made by a

21  defendant upon being informed that a crime had been committed

22  or upon being accused of a criminal charge may be considered

23  by the jury.

24          When a defendant voluntarily offers an explanation

25  or voluntarily makes some statement tending to show his

1    innocence and it is later shown that the defendant knew that

2    this statement or explanation was false, the jury may

3    consider this as showing a consciousness of guilt on the part

4    of a defendant since it is reasonable to infer that an

5    innocent person does not usually find it necessary to invent

6    or fabricate an explanation or statement tending to establish

7    his innocence.

8              Whether or not evidence as to a defendant's

9    explanation or statement points to a consciousness of guilt

10   on his part and the significance, if any, to be attached to

11   any such evidence are matters exclusively within the province

12   of the jury since you are the sole judges of the facts of

13   this case.

14             In your evaluation of the evidence of an exculpatory

15   statement shown to be false, you may consider that there may

16   be reasons -- fully consistent with innocence -- that could

17   cause a person to give a false statement showing that he did

18   not commit a crime.  Fear of law enforcement, reluctance to

19   become involved, and simple mistake may cause a person who

20   has committed no crime to give such a false statement or

21   explanation.

22             Instruction Number 29 deals with "Proof may be

23   disjunctive."

24             The Court instructs the jury that although the

25   indictment may charge a defendant with committing an offense

1    in several ways, using conjunctive language -- that is, the

2    word "and" -- it is sufficient if the government proves the

3    offense in the disjunctive -- that means by the word, for

4    example, "or" -- that is to say, the jury may convict on a

5    unanimous finding of any elements of a conjunctively charged

6    offense.

7            Therefore, I instruct you that it is not necessary

8    for the government to prove that the defendant did each of

9    those things charged in the indictment.  It is sufficient if

10   the government proves beyond a reasonable doubt that the

11   defendant did any of these alternative acts charged, as long

12   as you all agree that the same particular alternative act was

13   committed.

14           What is aiding and abetting?  I'm sure you've heard

15   the term "aiding and abetting" somewhere.

16           A person may violate the law even though he or she

17   does not personally do each and every act constituting the

18   offense if that person aided and abetted the commission of

19   the offense.

20           Section 2(a) of Title 18 of the United States Code

21   provides:  "Whoever commits an offense against the

22   United States or aids, abets, counsels, commands, induces, or

23   procures its commission is punishable as a principal."

24           Before a defendant may be held responsible for

25   aiding and abetting others in the commission of a crime, it

Carol L. Naughton, Official Court Reporter

1    is necessary that the government prove beyond a reasonable

2    doubt that the defendant knowingly and deliberately

3    associated himself in some way with the crime charged and

4    participated in it with the intent to commit the crime.

5         In order to be found guilty of aiding and abetting

6    the commission of the crimes charged in Counts Two through

7    Six, mail fraud; Count Seven and Counts Nine through Twelve,

8    wire fraud; Counts Fourteen through Eighteen, sale of

9    unregistered securities; Counts Nineteen through Twenty-Two,

10   securities fraud; and Counts Twenty-Four through

11   Twenty-Eight, unlawful monetary transactions of the

12   indictment, the government must prove beyond a reasonable

13   doubt that the defendant:

14        One, knew that the crime charged was to be committed

15   or was being committed; two, knowingly did some act for the

16   purpose of aiding, commanding, or encouraging the commission

17   of that crime; and, three, acted with the intention of

18   causing the crime charged to be committed.

19        Before the defendant may be found guilty as an aider

20   or an abettor to the crime, the government must also prove,

21   beyond a reasonable doubt, that some person or persons

22   committed each of the essential elements of the offenses

23   charged in Counts Two through Six, that is, the mail fraud;

24   Count Seven and Counts Nine through Twelve, wire fraud;

25   Counts Fourteen through Eighteen, sale of unregistered

1    securities; Counts Nineteen through Twenty-Two, securities

2    fraud; and Counts Twenty-Four through Twenty-Eight, unlawful

3    monetary transactions of the indictment.

4             Merely being present at the scene of the crime or

5    merely knowing that a crime is being committed or is about to

6    be committed is not sufficient conduct for the jury to find

7    the defendant aided and abetted the commission of that crime.

8             The government must prove that the defendant

9    knowingly and deliberately associated himself with the crime

10   in some way as a participant -- someone who wanted the crime

11   to be committed -- not as a mere spectator.

12            Ladies and gentlemen, a lot of those instructions

13   the Court just gave you were kind of preparatory

14   instructions.  What the Court is about to do now is the Court

15   will turn to instructions pertaining to each of the offenses

16   charged in the indictment.

17            We're going to start with Count One, which charges

18   conspiracy to commit mail and wire fraud.  These instructions

19   are usually long, but you will have them, again, in writing.

20            Count One of the Second Superseding Indictment

21   charges that from in or about January 2012, through in or

22   about July 2017, here in the Eastern District of Virginia and

23   elsewhere, the defendants, Daryl G. Bank and Billy J.

24   Seabolt, and others known and unknown, did knowingly and

25   intentionally combine, conspire, confederate, and agree

1    together to commit the following offenses against the

2    United States:

3              Number one, mail fraud:  Defendants, and others

4    known and unknown, having devised a scheme or artifice to

5    defraud and to obtain money and property by means of

6    materially false and fraudulent pretenses, representations,

7    and promises, did knowingly place and caused to be placed in

8    any post office and authorized depository for mail, any

9    matter and thing whatsoever to be sent and delivered by the

10   Postal Service; did deposit and caused to be deposited any

11   matter and thing whatever to be sent and delivered by any

12   private and commercial interstate carrier; and caused to be

13   delivered by mail and such carrier any matter and thing

14   whatever according to the directions thereon, in violation of

15   Title 18, United States Code, Section 1341; and

16             Number Two, wire fraud:  Defendants, and others

17   known and unknown, having devised a scheme and artifice to

18   defraud and to obtain money and property by means of

19   materially false and fraudulent pretenses, representations,

20   and promises, did transmit and cause to be transmitted by

21   means of wire communication in interstate commerce writings,

22   signs, signals, pictures, and sounds for the purpose of

23   execution of such scheme and artifice, in violation of

24   Title 18, United States Code, Section 1343.

25             The purpose of the conspiracy was for Daryl G. Bank

and Billy J. Seabolt, and others, to profit personally by misleading investors in material ways about the use of investment funds, who controlled the investment funds, the nature of the investment, and the status of the invested funds, in violation of Title 18, United States Code, Sections 1349, 1341, and 1343.

These jury instructions will follow a pattern. First you will be told what the charge is, then we'll move to talking about giving you and listing the statute that defines what the crime is, and the third thing we will do is move to what the government is required to do to prove that violation.

So now we go to Jury Instruction Number 32. The last one was 31.

Number 32 will take you to the statute that prohibits the charged crime.

Title 18, United States Code, Chapter 63, Section 1349, provides in pertinent part:

"Any person who...conspires to commit any offense under this chapter shall be subject to the same penalties as those proscribed for the offense, the commission of which was the object of the...conspiracy."

In turn, Title 18, United States Code, Chapter 63, Section 1341, provides in pertinent part:

Whoever, having devised or intending to devise any

1    scheme or artifice to defraud, for the purpose of executing

2    such scheme or artifice, places in any post office or

3    authorized depository for mail matter any matter or thing

4    whatever to be sent or delivered by the Postal Service or

5    sent or delivered by any private or commercial interstate

6    carrier, shall be guilty of an offense against the

7    United States.

8            In turn, Title 18, United States Code, Chapter 63,

9    Section 1343, provides in pertinent part:

10           Whoever, having devised or intending to devise any

11   scheme or artifice to defraud, transmits or causes to be

12   transmitted, by means of wire communications in interstate

13   commerce, any writings, signs, signals, pictures, or sounds,

14   for the purpose of executing such scheme or artifice, shall

15   be guilty of an offense against the United States.

16           That's the statute for mail fraud and wire fraud.

17           Now to the essential elements on Count One:

18           In order to sustain its burden of proof for the

19   crime of conspiracy as charged in Count One of the Second

20   Superseding Indictment, the government must prove the

21   following three essential elements beyond a reasonable doubt:

22           I sometimes tell lay people that when we say

23   "essential elements," in effect we're talking about the

24   critical facts.

25           First:  That the conspiracy, agreement, or

1    understanding to commit mail or wire fraud, as charged in the

2    Second Superseding Indictment, was formed, reached, or

3    entered into by two or more persons;

4           Second:  That at some time during the existence or

5    the life of the conspiracy, agreement, or understanding, the

6    defendant you are considering knew the purpose of the

7    agreement; and

8           Third:  That with knowledge of the purpose of the

9    conspiracy, agreement, or understanding, the defendant you

10   are considering then deliberately joined the conspiracy,

11   agreement, or understanding.

12          Now, what is a conspiracy, ladies and gentlemen?

13          A conspiracy is a combination or agreement of two or

14   more persons to join together to attempt to accomplish some

15   unlawful purpose.  It is a kind of partnership in criminal

16   purposes where each member becomes the agent of every other

17   member.  The gist or essence of the offense is a combination

18   or mutual agreement by two or more persons to disobey or

19   disregard the law.

20          The evidence in the case need not show that the

21   alleged members of the conspiracy entered into any express or

22   formal agreement; or that they directly stated between

23   themselves the details of the scheme and its object or the

24   purpose, or the precise means by which the object or purpose

25   was to be accomplished.

1          Similarly, the evidence in the case need not

2    establish that all the means or methods set forth in the

3    indictment were, in fact, agreed upon to carry out the

4    alleged conspiracy, or that all of the means or methods which

5    were agreed upon were actually used or put into operation.

6    Neither must it be proved that all of the persons charged to

7    have been members of the conspiracy were such, nor that the

8    alleged conspirators actually succeeded in accomplishing

9    their unlawful objectives.  Neither is it necessary for the

10   government to prove any of the overt acts listed in the

11   Second Superseding Indictment.

12          What the evidence in the case must show beyond a

13   reasonable doubt, ladies and gentlemen, is:

14          That two or more persons in some way or manner,

15   positively or tacitly, came to a mutual understanding to try

16   to accomplish a common unlawful plan, as charged in the

17   Second Superseding Indictment;

18          That the defendants willfully became members of such

19   conspiracy.

20          One may become a member of a conspiracy without full

21   knowledge of all the details of the unlawful scheme or the

22   names and identities of all of the other alleged

23   conspirators.

24          So if a defendant, with an understanding of the

25   unlawful character of a plan, knowingly and willfully joins

1    in an unlawful scheme on one occasion, that is sufficient to

2    convict him for conspiracy even though he had not

3    participated at earlier stages in the scheme and even though

4    he played only a minor part in the conspiracy.

5         Of course, mere presence at the scene of an alleged

6    transaction or event, or mere similarity of conduct among

7    various persons and the fact that they may have associated

8    with each other, and may have assembled together and

9    discussed common aims and interests, does not necessarily

10   establish proof of the existence of a conspiracy.

11        Also, a person who has no knowledge of a conspiracy,

12   but who happens to act in a way which advances some object or

13   purpose of a conspiracy, does not thereby become a

14   conspirator.

15        In your consideration of the conspiracy offense, as

16   alleged in the Second Superseding Indictment, you should

17   first determine, from all of the testimony and evidence in

18   the case, whether or not the conspiracy existed as charged.

19   If you conclude that a conspiracy did exist as alleged, you

20   should next determine whether or not the defendants willfully

21   became members of such a conspiracy.

22        If and when it does appear beyond a reasonable doubt

23   from the evidence in the case that a conspiracy did exist as

24   charged, and that the defendants were members, then the

25   statements and acts made and done during such conspiracy and

1   in furtherance of its objects, by another proven member of

2   the conspiracy, may be considered by the jury as evidence

3   against the defendant under consideration, even though he was

4   not present to hear the statements made or see the act done.

5          This is true, ladies and gentlemen, because, as

6   stated earlier, a conspiracy is a kind of partnership so that

7   under the law each member is an agent or partner of every

8   other member and each member is bound by or responsible for

9   the acts and the statements of every other member made in

10  pursuance of their unlawful scheme.

11         The next instruction may seem like it's repetitious,

12  but it defines the existence of an agreement, a conspiracy

13  agreement.  What does all that mean?  So we will read this

14  instruction also to you:

15         A criminal conspiracy is an agreement or a mutual

16  understanding knowingly made and knowingly entered into by at

17  least two people to violate the law by some joint or common

18  plan or course of action.  A conspiracy is, in a very true

19  sense, a partnership in crime.

20         I told you it was repetitive, but the Court is still

21  required to give it.

22         A conspiracy or agreement to violate the law, like

23  any other kind of agreement or understanding, need not be

24  formal, written, or even expressed directly in every detail.

25         The government must prove that the defendants, Daryl

1  Bank and Billy J. Seabolt, knowingly and deliberately arrived

2  at an agreement or understanding that they, and perhaps

3  others, would violate some law by means of some common plan

4  or course of action as alleged in Count One of the Second

5  Superseding Indictment.

6         It is proof of this conscious understanding and

7  deliberate agreement by the alleged members that should be

8  central to your consideration of the charge of conspiracy.

9         Unless the government proves beyond a reasonable

10  doubt that a conspiracy, just as explained, actually existed,

11  then you must acquit the defendants.

12         What does it mean to be a member in a conspiracy?

13  This is Instruction Number 36.  The last one was 35.

14         Before the jury may find that the defendants or any

15  other person became a member of the conspiracy charged in

16  Count One of the Second Superseding Indictment --

17         Ladies and gentlemen, no matter how many times you

18  check these instructions, you always miss something.

19  Everywhere where you see the word "Third" Superseding

20  Indictment, we're in the Second Superseding Indictment.

21         -- the evidence in the case must show beyond a

22  reasonable doubt that the defendants knew one or more of the

23  purposes or goals of the agreement or understanding and

24  deliberately entered into the agreement intended, in some

25  way, to accomplish the goal or purpose by this common plan or

1  joint action.

2         Merely associating with others and discussing common

3  goals, mere similarity of conduct between or among such

4  persons, merely being present, again, at the place where a

5  crime takes place or is discussed, or even knowing about

6  criminal conduct does not, of itself, make someone a member

7  of the conspiracy or a conspirator.

8         However, once it has been shown that a conspiracy

9  exists, the evidence need only establish a slight connection

10  between the defendants and the conspiracy.

11         Instruction Number 37.  How do you consider the acts

12  and declarations of co-conspirators?  I think we covered a

13  little bit of this before, but here's another instruction:

14         Evidence has been received in this case that certain

15  persons who are alleged in Count One of the indictment to be

16  co-conspirators of the defendants and other unnamed

17  co-conspirators have done or said things during the existence

18  or life of the alleged conspiracy in order to further or

19  advance its goals.

20         Such acts and statements of these co-conspirators

21  and other individuals may be considered by you in determining

22  whether or not the government has proven the charges in

23  Count One of the indictment against the defendants.

24         Since these acts may have been performed and these

25  statements may have been made outside the presence of the

1    defendant and even done or said without the defendant's

2    knowledge, these acts or statements should be examined with

3    particular care by you before considering them against the

4    defendant who did not do a particular act or make the

5    particular statement.

6           I want to make sure that all of you are still with

7    me, ladies and gentlemen.  So a little pause always helps.

8    The Court can use a little pause too.  I haven't done this

9    since my kids were in the second grade.  I mean, well, I

10   have, but let us continue.

11          Acts done or statements made by an alleged

12   co-conspirator before a defendant joined a conspiracy may

13   also be considered by you in determining whether the

14   government has sustained its burden of proof in Count One of

15   the indictment.

16          Acts done or statements made before an alleged

17   conspiracy began or after an alleged conspiracy ended,

18   however, may only be considered by you regarding the person

19   who performed that act or made that statement.

20          Next instruction, Instruction Number 38, deals with

21   agency, agent of the defendant.

22          It is not necessary for the government to prove that

23   the defendants, Daryl Bank and Billy J. Seabolt, personally

24   did every act constituting the offense charged.

25          As a general rule, whatever any person is legally

1    capable of doing himself, he can do through another, acting

2    as his agent.  So if the acts or conduct of another is

3    deliberately ordered or directed by a defendant or

4    deliberately authorized or consented to by a defendant, then

5    the law holds that defendant responsible for such acts or

6    conduct just the same as if personally done by the defendant.

7           Next instruction, Instruction Number 39, deals with

8    what they call a conspirator's liability for the substantive

9    counts.  Those are non-conspirator counts.

10          A conspirator is responsible for offenses committed

11   by another conspirator if the conspirator was a member of the

12   conspiracy when the offense was committed and if the offense

13   was committed in furtherance of, or as a foreseeable

14   consequence of, the conspiracy.

15          Therefore, if you have first found the defendant

16   guilty of the conspiracy charged in Counts One, Thirteen, and

17   Twenty-Three -- those are the three conspiracy counts -- and

18   if you find beyond a reasonable doubt that, during the time

19   the defendant was a member of that conspiracy, another

20   conspirator committed the offenses in furtherance of or as a

21   foreseeable consequence of that conspiracy, then you may find

22   the defendant guilty of other charges, even though the

23   defendant may not have participated in any or all of the acts

24   which constitute the offenses described in other charges in

25   the Superseding Indictment.

1          Now, Instruction Number 40 has to do with the

2    success of the conspiracy.

3          The government is not required to prove, ladies and

4    gentlemen, that the parties to or the members of the alleged

5    agreements or conspiracy were successful in achieving any or

6    all of the objects of the agreement or conspiracy.

7          Unanimity explained, Instruction Number 41:

8          Each of the conspiracy counts of the Second

9    Superseding Indictment charge the defendants with violation

10   of federal law concerning conspiracy.  The Second Superseding

11   Indictment alleges a number of separate means or methods by

12   which the defendants are accused of violating the law.

13         The government is not required to prove all of the

14   means or methods alleged in Count Thirteen of the Second

15   Superseding Indictment.

16         Each juror must agree with each of the other jurors,

17   however, that the same means or methods alleged in a

18   conspiracy count within the Second Superseding Indictment

19   was, in fact, engaged in or employed by defendants in

20   committing the crime charged in a conspiracy count within the

21   Second Superseding Indictment.

22         The jury need not unanimously agree on each means or

23   method, but in order to convict, you must unanimously agree

24   upon at least one such means or method as one engaged in by

25   the defendants.

1          Unless the government has proven the same means or

2    method to each of you, beyond a reasonable doubt, you must

3    acquit the defendant of the crime charged in each conspiracy

4    count within the Second Superseding Indictment.

5          Now let's turn to Counts Two through Six:

6          Counts Two through Six of the Second Superseding

7    Indictment charge that, on or about the dates set forth

8    below -- and the dates of the alleged offenses are set out in

9    a chart for Counts Two, Three, and Four -- in the Eastern

10   District of Virginia and elsewhere, for the purpose of

11   executing the scheme and artifice to defraud and for

12   obtaining money and property by means of materially false and

13   fraudulent pretenses, representations, and promises, and

14   attempting to do so, the defendants, Daryl G. Bank and Billy

15   J. Seabolt, knowingly caused to be delivered by U.S. mail and

16   any private and commercial interstate carrier any matter and

17   thing whatever according to the directions thereon, and at

18   the place at which it was directed to be delivered by the

19   person to whom it was addressed, the following matters, in

20   violation of Title 18, United States Code, Section 1341

21   and 2:

22          And on the bottom of this instruction, you have, for

23   example, Count Two.  It tells you the date and the item

24   mailed.  Count Three gives you the date, again, and the item

25   mailed, and so forth right on through Count Six.  So that's

1    the way that instruction is laid out.

2           Now, that is the nature of the offense charged.

3    What does the statute say which prohibits mail fraud?  It

4    says:

5           Section 1341 of Title 18 of the United States Code

6    provides that:

7           Whoever, having devised or intending to devise any

8    scheme or artifice to defraud or for obtaining money or

9    property by means of false or fraudulent pretenses,

10   representations, or promises, and for the purpose of

11   executing such scheme or artifice, or attempting to do so,

12   places in any post office, or authorized depository for mail

13   matter, any matter or thing whatever to be sent or delivered

14   according to the directions thereon shall be guilty of an

15   offense against the United States.

16          That was 43.

17          What does the government need to prove, looking at

18   Instruction 44, to prove each of Counts Two through Six?

19   There are basically four critical elements the government has

20   to prove.

21          In order to sustain its burden of proof for the

22   crime of using the mail to conduct fraud as charged in

23   Counts Two through Six of the Second Superseding Indictment,

24   the government must prove the following four essential

25   elements beyond a reasonable doubt:

1          First:  Defendant knowingly devised or knowingly

2   participated in, A, a scheme or artifice to defraud or, B, a

3   scheme or artifice to obtain money or property by means of

4   false or fraudulent pretenses, representations, or promises

5   as alleged in Counts Two through Six of the Second

6   Superseding Indictment;

7          Second:  The scheme or artifice to defraud or the

8   pretenses, representations, or promises were material, that

9   is, it would reasonably influence a person to part with money

10  or property;

11         Three:  The defendant did so with intent to

12  defraud; and

13         Four:  In advancement or furthering or carrying out

14  this scheme or artifice to obtain money or property by means

15  of false or fraudulent pretenses, representations, or

16  promises, the defendant used the mails or caused the mails to

17  be used.

18         Now, let me define these terms that have rolled off

19  my tongue a couple of times; "any scheme or artifice to

20  defraud" or "false or fraudulent pretenses, representations,

21  promises."  This is Instruction Number 45.  In case you don't

22  know what that means, look at Instruction Number 45.

23         The phrases "any scheme or artifice to defraud" and

24  "any scheme or artifice for obtaining money or property" mean

25  any deliberate plan of action or course of conduct by which

1    someone intends to deceive or to cheat another or by which

2    someone intends to deprive another of something of value.

3          The term "false or fraudulent pretenses,

4    representations, or promises" means a statement or an

5    assertion which concerns a material or important fact or a

6    material or important aspect of the matter in question and

7    that was either known to be untrue at the time it was made or

8    used, or that was made or used with reckless indifference as

9    to whether it was, in fact, true or false, and made or used

10   with intent to defraud.

11         The term "false or fraudulent pretenses,

12   representations, or promises" includes actual, direct false

13   statements as well as or half-truths, and includes the

14   knowing concealment of facts that are material or important

15   to the matter in question and that were made or used with the

16   intent to defraud.

17         A "scheme or artifice to defraud" includes a scheme

18   to deprive another person of tangible as well as intangible

19   property rights.  Intangible property rights means anything

20   valued or considered to be a source of wealth, including, for

21   example, the right to decide how one's money is to be spent.

22         The intent to defraud.  What does that term mean?

23   To act with an intent to defraud means -- and this is

24   Instruction 46:

25         To act with an "intent to defraud" means to act

Carol L. Naughton, Official Court Reporter

1   knowingly and with the intention or the purpose to deceive or

2   to cheat.

3            An intent to defraud is accompanied, ordinarily, by

4   a desire or a purpose to bring about some gain or benefit to

5   oneself or some other person or by a desire or a purpose to

6   cause some loss to some person.

7            "Use of the mails" speaks for itself, but the Court

8   is required to define it.

9            The use of the United States mails or an interstate

10  carrier is an essential element of the offense of mail fraud

11  as charged in Counts Two through Six of the Second

12  Superseding Indictment.

13           The government is not required to prove the

14  defendant actually mailed anything or that the defendant even

15  intended that the mails would be used to further or to

16  advance or to carry out the scheme or plan to obtain property

17  by false or fraudulent pretenses, representations, or

18  promises.

19           The government must prove beyond a reasonable doubt,

20  however, that the mails or an interstate carrier were, in

21  fact, used in some manner to further or to advance or to

22  carry out the scheme to obtain money or property by false or

23  fraudulent pretenses, representations, or promises.

24           The government must also prove that the use of the

25  mails or the interstate carrier would follow in the ordinary

course of business or events or that the use of the mails or
the interstate carrier by someone was reasonably foreseeable.

It is not necessary for the government to prove that
the item itself mailed was false or fraudulent or contained
any false or fraudulent statement, representation, or
promise, or contained any request for money or thing of
value.

The government must prove beyond a reasonable doubt,
however, that the use of the mails or the interstate carrier
furthered or advanced or carried out, in some way, the scheme
or plan to obtain money or property by means of false or
fraudulent pretenses, representations, or promises.

The government and the defendants have stipulated
that the relevant documents were placed into the mail to be
sent and delivered by the U.S. Postal Service, and/or
deposited to be sent or delivered by a private or commercial
interstate carrier.

The government has stipulated.  They have agreed to
that.  That's considered proof.

What is material?  We talked about materiality.
Something that is material, what does that mean?

A statement or representation is material if it has
a natural tendency to influence or is capable of influencing
a decision or action.

To be material, it is not necessary that the

statement or representation, in fact, influence or deceive.

As used in these instructions, a representation, pretense, or promise is material if it has a natural tendency to influence, or is capable of influencing, the decisions of the person or entity to which it is addressed.

The government can prove materiality in either of two ways:

First:  A representation or promise or pretense is material if a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question;

Second:  A statement could be material, even though only an unreasonable person would rely on it, if the person who made the statement knew or had reason to know his or her victim was likely to rely on it.

In determining materiality, you should consider that naivety, carelessness, negligence, or stupidity of a victim does not excuse criminal conduct, if any, on the part of the defendant.

Let us turn our attention to the wire fraud counts, Count Seven and Counts Nine through Twelve.

Count Seven and Counts Nine through Twelve of the Second Superseding Indictment charge that on or about the dates set forth below --

Again, the dates and the charges are in these charts

1    on this instruction.

2         -- in the Eastern District of Virginia and

3    elsewhere, for the purpose of executing a scheme and artifice

4    to defraud and for obtaining money and property by means of

5    materially false and fraudulent pretenses, representations,

6    and promises, the defendants, Daryl G. Bank and Billy J.

7    Seabolt, in violation of Title 18, United States Code,

8    Section 1943 and 2, knowingly transmitted and caused to be

9    transmitted by means of wire communication in interstate

10   commerce certain writings, signs, signals, pictures, and

11   sounds, as follows:

12        Count Seven alleges December 19th, it sent off,

13   transferred $50,000.  And you go on through Count Nine, it

14   alleges the date and what was sent.  You look at those

15   counts, and you will deliberate based on looking at those

16   counts.

17        Now, the statute defining the offense is in

18   Instruction 50:

19        Section 1343 of Title 18 of the United States Code

20   provides, in part, that:

21        Whoever, having devised or intending to devise any

22   scheme or artifice to defraud or for obtaining money or

23   property by means of false or fraudulent pretenses,

24   representations, or promises, transmits or causes to be

25   transmitted by means of a wire communication in interstate

1   commerce writings, signs, signals, pictures, or sounds for

2   the purpose of executing such scheme or artifice, shall be

3   guilty of an offense against the United States.

4        Now, what must the government prove beyond a

5   reasonable doubt on these counts?  The government must prove,

6   again, four elements.

7        In order to sustain its burden of proof for the

8   crime of using a wire communication to further a scheme or a

9   plan to obtain money or property by means of false or

10   fraudulent pretenses, representations, or promises as charged

11   in Count Seven and Counts Nine through Twelve of the Second

12   Superseding Indictment, the government must prove the

13   following four -- the following four essential elements

14   beyond a reasonable doubt:

15        First:  The defendant knowingly devised or

16   participated in, A, a scheme or artifice to defraud or, B, a

17   scheme or artifice to obtain money or property by means of

18   materially false or fraudulent pretenses, representations, or

19   promises, as detailed in Count Seven and Counts Nine through

20   Twelve of the Second Superseding Indictment;

21        Second:  The scheme or artifice to defraud or the

22   pretenses, representations, or promises were material, that

23   is, they would reasonably influence a person to part with

24   money or property;

25        Three:  The defendant did so with intent to

1    defraud; and

2          Four:  In advancing or furthering or carrying out

3    this scheme to defraud or scheme to obtain money or property

4    by means of false or fraudulent pretenses, representations,

5    or promises, defendant transmitted any writings, signal, or

6    sound by means of a wire, radio, or television communication

7    in interstate commerce or caused the transmission of any

8    writing, signal, or sound of some kind by means of a wire

9    communication.

10         I'll clear it up now.  The Court used "or television

11   communication."  There was no evidence of television

12   communication.

13         Now, ladies and gentlemen, what does the term "use

14   of wire defined" mean?  What does it mean to use a wire

15   communication?  We're going to talk about that for just a

16   second.

17         A wire communication includes a wire transfer of

18   funds between banks in different states or between a bank in

19   the United States and a bank in a foreign country.  The

20   government and the defendants have stipulated -- agreed

21   proved -- that the wires charged in the Second Superseding

22   Indictment consisted of interstate wire transfer of funds

23   between banks in different states.

24         The use of the wires need not itself be a fraudulent

25   representation.  It must, however, further or assist in the

1    carrying out of the scheme to defraud.

2         It is not necessary for the defendant to be directly

3    or personally involved in the wire communication, as long as

4    the communication was reasonably foreseeable in the execution

5    of the alleged scheme to defraud in which the defendant is

6    accused of participating.

7         In this regard, it is sufficient to establish this

8    element of the crime if the evidence justifies a finding that

9    the defendant caused the wires to be used by others.  This

10   does not mean that the defendant must specifically have

11   authorized others to transfer the funds.

12        When one does an act with knowledge that the use of

13   the wires will follow in the ordinary course of business or

14   where such use of the wires can reasonably be foreseen, even

15   though not actually intended, then he causes the wires to be

16   used.

17        The government contends that it was reasonably

18   foreseeable that the wires would be used in the ordinary

19   course of business -- for example, to transfer the funds

20   between banks -- and, therefore, the defendant caused the use

21   of the wires.

22        The government does not have to prove that the wires

23   were used on the exact date charged in the Second Superseding

24   Indictment.  It is sufficient if the evidence establish

25   beyond a reasonable doubt that the wires were used on a date

1    substantially similar to the dates charged in the Second

2    Superseding Indictment.

3            We're slowly getting there, ladies and gentlemen.   I

4    think we might make it by 11:30.

5            The nature of the offense charged in Count Thirteen,

6    conspiracy to sell unregistered securities and to commit

7    security fraud:

8            Count Thirteen of the Second Superseding Indictment

9    charges that from in or about January 2012 through in or

10   about August 2017, in the Eastern District of Virginia, and

11   elsewhere, the defendants, Daryl G. Bank and Billy J.

12   Seabolt, and others known and unknown, knowingly and

13   intentionally combined, conspired, confederated, and agreed

14   to commit the following offenses against the United States:

15           Of course, this is the conspiracy charge.

16           A, the unlawful sale of unregistered securities:

17   The defendants, and others known and unknown, willfully

18   offered and sold, and caused the offer and sale of,

19   securities to the individuals when no registration statement

20   was filed with the United States Securities and Exchange

21   Commission and in effect as to the securities, and used the

22   means and instruments of transportation and communication in

23   interstate commerce and the mails in connection with the

24   offer and sale of the securities, in violation of Title 15,

25   United States Code, Section 77e and 77x; and

1        B:   The defendants, and others known and unknown,

2   willfully and knowingly, in the offer and sale of securities

3   by the use of the means and instruments of transportation and

4   communication in interstate commerce and by the use of mails,

5   directly and indirectly:

6        A, employed a device, scheme, and artifice to

7   defraud; B, obtained money by means of untrue statements of

8   material fact and omissions to state material facts necessary

9   in order to make the statements made, in light of the

10  circumstances under which they are made, not misleading; and,

11  C, engaged in transactions, practices, and courses of

12  business which operated and would have operated as a fraud

13  and deceit upon the purchasers, in violation of Title 15,

14  United States Code, Section 77q(a) and 77x.

15       The purpose of the conspiracy was for the defendants

16  to enrich themselves through the fraudulent sale of

17  unregistered securities.

18       In furtherance of the conspiracy and to effect the

19  purpose thereof, the following overt acts, among others, were

20  committed in the Eastern District of Virginia and elsewhere:

21       1.   The government incorporates by reference the

22  acts described in the general allegations section of this

23  Second Superseding Indictment as overt acts in furtherance of

24  this conspiracy.

25       2.   On or about January 8, 2014, Gibson sent an

1    e-mail to a conspirator attaching the signature pages of the

2    Operating Agreements for victim MG to sign.

3         3.  On or about April 11, 2013, Bank made fraudulent

4    misrepresentations and omissions to victim AR about numerous

5    securities.

6         4.  On or about July 2, 2013, the conspirators

7    caused victim KG to wire $25,000 to purchase an interest in

8    the security WeMonitor Group LLC.

9         5.  On or about December 19, 2013, the conspirators

10   caused victim LZ to wire $50,000 to purchase an interest in

11   the security DSPF Group LLC.

12        6.  On or about November 14, 2014, Seabolt wrote a

13   letter to the Virginia SCC claiming that his "client has not

14   been selling securities at all."

15        7.  On or about December 12, 2014, the conspirators

16   caused victim GC to wire $160,000 to purchase an interest in

17   security Venture Capital I.

18        8.  On or about June 27, 2015, the conspirators

19   caused victim GB to wire $100,000 to purchase an interest in

20   the security Venture Capital I.

21        And, lastly, 9.  On or about June 23, 2015, the

22   conspirators caused victim NC and GC to wire $32,000 to

23   purchase an interest in the security Spectrum 100 LLC.

24        Now let's turn to Instruction 54.  This is dealing

25   with the offense charged in Count Thirteen.

1          Section 371, ladies and gentlemen, of the United

2     States Code provides, in part, that:

3          If two or more persons conspire either to commit an

4     offense against the United States or to defraud the

5     United States, or any agency thereof, and one or more of such

6     persons do any act to effect the object of the conspiracy,

7     they shall be guilty of an offense against the United States.

8          What does Count Thirteen charge?  What does the

9     government have to prove on Count Thirteen?

10          To prove a conspiracy as charged in Count Thirteen,

11     the government must prove four essential elements beyond a

12     reasonable doubt:

13          First:  The conspiracy, agreement, or understanding

14     to sell unregistered securities or to commit securities

15     fraud, as charged in the Second Superseding Indictment, was

16     formed, reached, or entered into by two or more persons;

17          Second:  At some time during the existence of the

18     life of that conspiracy, agreement, or understanding, the

19     defendant you are considering knew the purpose of the

20     agreement;

21          Three:  With knowledge of the purpose of the

22     conspiracy, agreement, or understanding, the defendant that

23     you are considering did deliberately join the conspiracy,

24     agreement, or understanding; and

25          Fourth:  At some time during the existence of the

1  life of the conspiracy, agreement, or understanding, one of

2  its alleged members knowingly performed one of the overt acts

3  charged in the Second Superseding Indictment and did so in

4  order to further or advance the purpose of the agreement.

5          Now, I've referred to an overt act.  What is an

6  overt act?  Instruction 56 defines "overt act."

7          In order to sustain its burden of proof under

8  Count Thirteen of the Second Superseding Indictment, the

9  government must prove beyond a reasonable doubt that one of

10  the members of the alleged conspiracy or agreement knowingly

11  performed at least one overt act and that this overt act was

12  performed during the existence of the life of the conspiracy

13  and was done to somehow further the goals of the conspiracy

14  or agreement.

15          The term "overt act," ladies and gentlemen, means

16  some type of outward, objective action performed by one of

17  the parties to, or one of the members of, the agreement or

18  conspiracy which evidences that agreement.

19          Although you must unanimously agree that the same

20  overt act was committed, the government is not required to

21  prove more than one of the overt acts charged.

22          The overt act may, but for the alleged illegal

23  agreement, appear totally innocent and legal.

24          Now, what is the relationship between the

25  substantive acts and the conspiracy charged in

```
 1   Count Thirteen?
 2           Under the law, participation in a conspiracy to
 3   commit a crime is an entirely separate and distinct charge
 4   from the actual violation of the substantive charge which may
 5   be the object of the conspiracy.
 6           I know that sounds confusing, but we will go on and
 7   further explain it.
 8           Therefore, all of the underlying elements of the
 9   substantive participation in an act affecting mail and wire
10   fraud need not be met in order for you to find that there was
11   a conspiracy to commit the offense.  All that you must find
12   is that there was an agreement to commit that offense and
13   that a defendant voluntarily joined the conspiracy.
14           I will instruct you on the elements of selling
15   unregistered securities and committing securities fraud
16   shortly.  You should consider these elements in determining
17   whether the defendants knowingly and intentionally conspired
18   to participate in selling unregistered securities and
19   committing securities fraud.
20           As I've explained to you before, however, the
21   government need not prove each of these underlying elements
22   to prove that a defendant conspired to participate in selling
23   unregistered securities and committing securities fraud.
24           Now, let's turn to Counts Fourteen through Eighteen,
25   sale of unregistered securities.
```

 1          Counts Fourteen through Eighteen of the Second

 2   Superseding Indictment alleges that from on or about the

 3   dates set forth below, in the Eastern District of Virginia

 4   and elsewhere, defendants, Daryl G. Bank and Billy J.

 5   Seabolt, and others known and unknown, in violation of

 6   Title 15, United States Code, Section 77e and 77x, and

 7   Title 18, United States Code, Section 2, willfully offered

 8   and sold, and caused the offer and sale of, securities to the

 9   individuals identified below when no registration statement

10   was filed with the United States Securities and Exchange

11   Commission and in effect as to the securities, and used the

12   means and instruments of transportation and communication in

13   interstate commerce and the mails in connection with the

14   offer and sale of securities.

15          Ladies and gentlemen, once again, if you look at

16   Counts Fourteen through Eighteen, these counts give the date

17   of the alleged sale, who the victims were, what the alleged

18   amounts were right on the bottom of the instruction.

19          That's the alleged offense.  Now, what is the

20   statute that defines the offense that we've just discussed,

21   that is, the unlawful sale of securities?

22          The Second Superseding Indictment charges that the

23   defendant used or caused to be used the mails or facility of

24   interstate commerce to sell a security when no registration

25   statement was in effect.  The relevant statute is

1    Section 77e(a)(1) and (2) of Title 15 of the United States
2    Code.  It provides:
3           Unless a registration statement is in effect as to a
4    security, it shall be unlawful for any person, directly or
5    indirectly, to, one, make use of any means or instruments of
6    transportation or communication in interstate commerce or of
7    the mails to sell such security through the use or medium of
8    any prospectus or otherwise; or, two, to carry or cause to be
9    carried through the mails or in interstate commerce, by any
10   means or instruments of transportation, any such security for
11   the purpose of sale or for delivery after sale.
12          Now, again, what does the government have to prove
13   to prove these charges?  Number 60:
14          In order to prove the defendant guilty of sale of
15   unregistered securities as alleged in Counts Fourteen through
16   Eighteen of the Second Superseding Indictment, the government
17   must establish each of the following elements beyond a
18   reasonable doubt:
19          First:  That the securities which the defendant sold
20   were not registered with the Securities and Exchange
21   Commission;
22          Second:  That the securities sold were required to
23   be registered with the Securities and Exchange Commission,
24   that is, that the transactions were not exempt from
25   registration;

1          Third:  That knowing the securities were not

2    registered and not exempt, the defendant willfully sold or

3    caused the securities to be sold to the public;

4          Fourth:  The defendant knowingly, directly or

5    indirectly, used or caused to be used the mails or the means

6    and instrumentalities of interstate commerce to sell the

7    securities.

8          The Court is going to define a whole bunch of things

9    pertaining to these securities here.  There's five different

10   elements we have to define.

11         The first element that the government must prove

12   beyond a reasonable doubt is that the securities which the

13   defendants sold were not registered with the Securities and

14   Exchange Commission.  And to satisfy the first element of the

15   offense, the government and the defendants have stipulated

16   that there were no registration statements filed with the

17   United States Securities and Exchange Commission for any of

18   the investments offered by Dominion Private Client Group LLC

19   or its successor entities, including FAS Partners LLC and

20   Sovereign Asset Group LLC.

21         The second element deals with the security not being

22   exempt from registration.

23         The second element that the government must prove

24   beyond a reasonable doubt is that the securities sold were

25   required to be registered with the Securities and Exchange

1  Commission; that is, that the transactions were not exempt

2  from registration.

3          I've already told you that the main purpose of the

4  Securities Act of 1933 is to protect investors by requiring

5  publication of information concerning securities offered for

6  sale so that investors can make informed investment

7  decisions.

8          However, Congress recognized that under certain

9  circumstances, securities -- let me back up.

10         However, Congress recognized that under certain

11  circumstances, investors do not need the protection of the

12  Act.  Therefore, in those instances where Congress believed

13  that there is no practical need for a registration statement,

14  securities issued by a company may be exempted from the

15  registration provision of the Act.

16         Exemptions from the registration requirements are

17  limited to situations where all persons being offered

18  securities have access to those basic and material facts

19  about a company that a registration statement filed with the

20  Securities and Exchange Commission would disclose.

21         Congress felt that such purchasers are in a position

22  to fend for themselves on an arm's length basis in acquiring

23  the company's securities.  Securities offered and sold under

24  those circumstances are not subject to registration

25  requirements of the Act.

1          Statutory purpose:

2          The stock market crash of 1929 -- little history

3    here.  The stock market crash of 1929 led to much legislation

4    in the area of federal regulation.  Included in this

5    legislation was the Securities Act of 1933 and the creation

6    of the Securities and Exchange Commission.

7          The Securities Act was enacted to protect the

8    investing public in the purchase of stock that is publicly

9    distributed.  The Act requires full and fair disclosure of

10   all important facts so that the investing public can make

11   informed investment decisions.

12         When it enacted the Securities Act, Congress

13   recognized that the purchase of a stock is different from the

14   purchase of a vegetable bought in the grocery store in that

15   the average investor is not in a position to make a personal

16   investigation to determine the worth, quality, and value of

17   the security.

18         The Securities Act requires a company wishing to

19   sell its stock to disclose information about the issuing

20   company which would be material to the investment decisions

21   of a person interested in buying stock.

22         Under the Securities Act, disclosure takes the form

23   of a registration statement filed with the Securities and

24   Exchange Commission and a prospectus summarizing the

25   information in the registration statement, which is available

1    to the prospective investors.  The Act does not authorize the

2    SEC to pass upon the merits of the securities proposed to be

3    offered.

4            Among other matters, a registration statement must

5    disclose information about the nature of the company and its

6    stock, including information about the financial condition of

7    the company, the persons who control the company and its

8    stock, a reasonable factual basis for the anticipated

9    prospectus for the future, and a statement of the company's

10   assets and liabilities.

11           In sum, the registration statement contains

12   information that is designed to protect investors by

13   furnishing them with detailed information or knowledge of the

14   company and its affairs to make it possible to form an

15   informed investment decision.

16           Unless and until these requirements are fulfilled,

17   the security may not be offered to the public, and the mails

18   and channels of interstate commerce are closed to the

19   distribution or redistribution of an issue.

20           What is a security?  You've heard a lot of talk

21   about a security and what is and what is not a security.

22           The term "security," ladies and gentlemen, is

23   defined -- the term "security" is defined by the statute that

24   makes securities fraud a crime.  Congress defined the term

25   "security" broadly because its purpose was to regulate

investments, in whatever form they are made and by whatever
name they are called.

The definition of the term "security" includes:
"Any note, stock, investment contract, participation in any
profit-sharing agreement, group or index of securities,
including any interest therein or based on the value thereof,
and in general, any interest or instrument commonly known as
a security."

In essence, a security is an investment in an
enterprise with the expectation of profit from the efforts of
other people.

What is an investment contract?

For purposes of the Securities Act, an investment
contract means a contract, transaction, or scheme whereby a
person invests his money in a common enterprise and is led to
expect profits solely from the efforts of the promoter or a
third party, it being immaterial whether the shares in the
enterprise are evidenced by formal certificates or by nominal
interests in the physical assets employed in the enterprise.

It embodies a flexible, rather than a static,
principle, one that is capable of adaptation to meet the
countless and variable schemes devised by those who seek to
use the money of others on the promise of profits.

As such, an investment contract is a security when
it involves:  first, an investment of money; in a common

1  enterprise; with the expectation of profit; and to be derived

2  solely through the efforts of the promoter or a third party.

3          In searching for the meaning and the scope of the

4  word "security," form should be disregarded for substance and

5  the emphasis should be on the economic reality.

6          We talked about a note in this trial.  What is a

7  note?  "Note" defined:

8          For purposes of the Securities Act, there is a

9  presumption that every note is a security unless, under the

10  family resemblance test, it appears to be more connected with

11  a consumer context, such as a short-term financing or a

12  mortgage on a home, rather than an investment.

13          In determining whether a note in this case is

14  properly categorized as an investment, such that it satisfies

15  the definition of a security, you should consider the

16  following:

17          One, motivations:  If the seller's purpose is to

18  raise money for the general use of a business enterprise or

19  to finance substantial investments and the buyer is

20  interested primarily in the profit the note is expected to

21  generate, the note is likely to be a security.

22          Two, plan of distribution:  If the plan of

23  distribution of the notes gave rise to reasonable expectation

24  that the note was an instrument in which there is common

25  trading for speculation or investment, then it's likely to be

1    a security.  If the notes are sold to a wide range of

2    unsophisticated people, the notes are more likely to be

3    securities.

4         Three, the public's reasonable perception:  If the

5    notes were sold as what the public would reasonably perceive

6    to be investments, then the note is more likely a security.

7         Four, regulated by another scheme:  If the note is

8    not subject to regulation under another regulatory scheme and

9    the application of the Securities Act is necessary to

10   regulate the note, then it is likely to be a security.

11        You must weigh these factors, none of which is

12   dispositive, and deliberate to determine whether the notes at

13   issue are properly characterized as investments, which

14   constitute securities, or properly characterized as a

15   consumer or commercial loan, which are not securities.

16        Counts Nineteen through Twenty-Two deal with

17   securities fraud.

18        I don't think I'm going to make my 11:30 target, but

19   if there's an emergency, the Court will take a brief break

20   for you to tend to the emergency; otherwise, we'll move on.

21   The Court keeps trying to estimate how long it's going to

22   take to finish these instructions.

23        So if there's an emergency, raise your hand, and the

24   Court will stop and deal with it.

25        THE CLERK:  Judge, we have one.

1          THE COURT:  Okay.  Ladies and gentlemen, we're going

2     to take a 20-minute break, and then we'll be back to finish.

3          (The jury exited the courtroom.)

4          (Recess from 11:28 a.m. to 11:54 a.m.)

5          (The jury entered the courtroom.)

6          THE COURT:  The record will reflect that all jurors

7     are present.  Does counsel concur?

8          MS. O'BOYLE:  Yes, Your Honor.

9          MR. BROCCOLETTI:  Yes, sir.

10         MS. MUNN:  Yes, sir.

11         THE COURT:  We were about to start on

12    Counts Nineteen through Twenty-Two when we left, which means

13    it takes us to Instruction Number 67, in which we lay out and

14    state the nature of the charges in those counts which deal

15    with securities fraud.

16         So I will start off reading the nature of the

17    offense, and then, as usual, I'll go over to the statute that

18    defines the offense, and then I'll go next to the elements,

19    what they have to prove to prove those charges.

20         Counts Nineteen through Twenty-Two of the Second

21    Superseding Indictment charge that from on or about the dates

22    set forth below -- and there's a chart down here for these

23    four charges.

24         From on or about the dates set forth below, in the

25    Eastern District of Virginia and elsewhere, defendants, Daryl

1  G. Bank and Billy J. Seabolt, and others known and unknown,

2  willfully and knowingly, in the offer and sale of securities

3  by the use of the means and instruments of transportation and

4  communication in interstate commerce and by the use of the

5  mails, directly and indirectly, A, employed a device, scheme,

6  and artifice to defraud; B, obtained money by means of untrue

7  statements of material fact and omissions to state material

8  facts necessary in order to make the statements made, in

9  light of the circumstances under which they were made, not

10  misleading; and, C, engaged in transactions, practices, and

11  courses of business which operated or would have operated as

12  a fraud and deceit upon investors, in violation of 15 U.S.C.

13  Section 77q(a), 77x, and 18 U.S.C. Section 2.

14         And the charges are laid out on the bottom of the

15  instruction as to Count Nineteen and Counts Twenty,

16  Twenty-One, and Twenty-Two.

17         So what is the statute pertaining to this offense?

18         The Second Superseding Indictment charges the

19  defendants with fraud and deceit in the sale of stock.

20         The relevant statute on this subject is Title 15,

21  United States Code, Section 77q(a)(1), (2), and (3).  It

22  provides:

23         It shall be unlawful for any person in the offer or

24  sale of any securities by the use of any means or instruments

25  of transportation or communication in interstate commerce or

1  by use of the mails, directly or indirectly:

2          One, to employ any device, scheme, or artifice to

3  defraud; or

4          Two, to obtain money or property by means of any

5  untrue statement of a material fact or any omission to state

6  a material fact necessary in order to make the statements

7  made, in light of the circumstances under which they were

8  made, not misleading; or

9          Three, to engage in any transaction, practice, or

10 course of business that operates or would operate as a fraud

11 or deceit upon the purchaser.

12         What are the elements of the offense that the

13 government must prove?  This is Instruction 69:

14         Counts Nineteen through Twenty-Two of the Second

15 Superseding Indictment charge the defendant with committing

16 securities fraud.  In order to prove the defendant guilty of

17 this charge, the government must prove beyond a reasonable

18 doubt each of three elements:

19         First:  The defendant offered or sold the securities

20 described in the Second Superseding Indictment;

21         Second:  In the offer or sale of securities, the

22 defendant made use of any means or instruments of

23 transportation or communication in interstate commerce or the

24 mails; and

25         Three:  In the offer or sell of these securities,

1    knowingly, willfully, and with the intent to defraud, either

2    employed any device, scheme, or artifice to defraud; or

3    obtained money or property by means of any untrue statement

4    of material fact or any omission to state a material fact

5    necessary in order to make the statements made, in light of

6    the circumstances under which they were made, not

7    misleading; or engaged in a transaction, practice, or course

8    of business which operated or would operate as a fraud or

9    deceit upon the purchaser.

10          The government, ladies and gentlemen, is not

11   required to prove all of these alternative acts to be

12   established -- to establish element three above as to the

13   security alleged in each count.

14          However, each juror must agree with each of the

15   other jurors that the same act was, in fact, engaged in or

16   employed by the defendants in the sale or offering of a

17   security alleged in the relevant count of the Second

18   Superseding Indictment.

19          For example, the government need not prove that in

20   selling or offering to sell a security alleged in

21   Count Nineteen, a defendant both employed any device or

22   scheme or artifice to defraud and engaged in a transaction,

23   practice, or course of business which operated or would

24   operate as a fraud or deceit upon the purchaser.

25          Instead, to convict a defendant on that count, the

1    jury need only unanimously agree on at least alternative act

2    as one engaged in by the defendants as to the security

3    alleged in that count.  You may find that the defendants

4    engaged in different alternative acts as between the

5    securities alleged in Counts Nineteen through Twenty-Two.

6         Unless the government has proven to each of you the

7    same alternative act satisfying element three as to a

8    specific count, beyond a reasonable doubt, you must acquit

9    the defendant of that count.

10        Now, as to the first element, dealing with a

11   fraudulent act, the first element the government must prove

12   beyond a reasonable doubt is that in the offering or sale of

13   a security, the defendant did any one or more of the

14   following:

15        One:  Employed a device, scheme, or artifice to

16   defraud, or

17        Two:  Obtained money or property by means of untrue

18   statements of material facts or failure to state material

19   facts that made what was said, under the circumstances,

20   misleading, or

21        Three:  Engaged in an act, practice, or course of

22   business that operated, or would operate, as a fraud or

23   deceit upon the purchaser.

24        It's not necessary for the government to establish

25   all three types of unlawful conduct in connection with the

1     offer of sale of securities.  Any one will be sufficient for

2     a conviction if you so find.

3           It is no defense to an overall scheme to defraud

4     that the defendant was not involved in the scheme from its

5     inception or played only a minor role with no contact with

6     investors and purchasers of the securities in question.  Nor

7     is it necessary for you to find that the defendant was the

8     actual seller or offeror of the security.

9           It is sufficient if the defendant participated in

10    the scheme or fraudulent conduct that involved the offer or

11    sale of a security.  By the same token, the government need

12    not prove that the defendant personally made the

13    misrepresentation or that he omitted the material fact.

14          It is sufficient if the government establishes that

15    the defendant caused a statement to be made or the fact to be

16    omitted.  With regard to the alleged misrepresentations and

17    omissions, you must determine whether the statement was true

18    or false when it was made and, in the case of alleged

19    omissions, whether the omission was misleading.

20          If you find that the government has established

21    beyond a reasonable doubt that a statement was false or a

22    statement was omitted, you must next determine whether the

23    fact misstated or omitted was material under the

24    circumstances.  A material fact is one that would have been

25    significant to a reasonable investor's investment decision.

1          This is not to say that it is a defense to the crime

2     if the material misrepresentation would not have deceived a

3     person of ordinary intelligence.  Once you find that there

4     was a material misrepresentation or omission of a material

5     fact, it does not matter whether the intended victims were

6     gullible buyers or sophisticated investors, because the

7     securities laws protect the gullible and unsophisticated as

8     well as the experienced investor.

9          To establish that the defendant omitted to state a

10    material fact, the government is required to show that the

11    defendant had a duty to disclose the information.  Such duty

12    can arise from a special relationship of trust and confidence

13    during which the defendant received confidential or nonpublic

14    information.

15         If you find that the defendant violated a

16    relationship of trust by using confidential information for

17    his own benefit without disclosing it, that would be

18    sufficient to satisfy this requirement.

19         To repeat, in order to find that the element was

20    violated because the defendant omitted a material fact, you

21    must find that there existed some special relationship, as

22    I've just explained, that created such a duty to disclose

23    that fact.  It is a breach of that duty that provides the

24    basis for the government's charge that the defendant violated

25    the Act by omitting to state a material fact necessary to

1    make what he said not misleading.

2          It does not matter whether the alleged unlawful

3    scheme was successful or not, or that the defendant profited

4    or received any benefit as a result of the alleged scheme.

5    Success is not an element of the crime charged.  However, if

6    you find the defendant did profit from the alleged scheme,

7    you may consider that in connection with the third element of

8    intent.

9          Nonetheless, ladies and gentlemen, you must find

10   that the conduct in question that is alleged to have been a

11   fraud did have some impact upon the investor.

12         Now, what does the phrase "the use of any means or

13   instruments of interstate commerce or the mails" mean?

14         "The use of any means or instruments of

15   transportation or communication in interstate commerce or by

16   the use of the mails, directly or indirectly," is an

17   essential element of the crime of securities fraud as charged

18   in Counts Nineteen through Twenty-Two of the Second

19   Superseding Indictment.

20         The term "interstate commerce," as used in these

21   instructions, means trade or commerce in securities or

22   transportation or communication relating to such trade or

23   commerce among the several states.

24         This element of the crime charged may be established

25   by the government -- may be established if the government

proves beyond a reasonable doubt that any means or instruments of interstate transportation or communication, or the mails, were, in fact, used in the scheme or that such use was reasonably foreseeable.

In this regard, however, it is not necessary for the government to prove that the defendant personally carried out the use of interstate commerce or the use of the mails.  It is not necessary to prove that such use was contemplated or intended by anyone involved in the scheme.  It is sufficient for the government to prove that beyond a reasonable doubt the defendant set forces in motion by foreseeably resulted in such use.

The matter, material, or information mailed, transported, or communicated need not itself contain a fraudulent representation or request money, but must be part of the overall scheme.

The government and defendants have stipulated, ladies and gentlemen -- that means they have agreed -- the relevant documents were placed into the mails to be sent and delivered by the U.S. Postal Service, and/or deposited to be sent or delivered by a private or commercial interstate carrier of the mails.

We turn now to Count Twenty-Three.  Count Twenty-Three is a conspiracy charge, again.  You received some previous instructions that help you understand

1    what a conspiracy was and how one becomes a member of the

2    conspiracy.  All of those foregone instructions still apply

3    here in this case on Count Twenty-Three.

4         Count Twenty-Three of the Second Superseding

5    Indictment charges that from in or about January 2012 through

6    in or about August 2017, in the Eastern District of Virginia

7    and elsewhere, the defendant Daryl G. Bank, and others known

8    and unknown, knowingly and intentionally combined, conspired,

9    confederated, and agreed to commit the following offenses

10   against the United States:

11        A, laundering of monetary instruments, that is, to

12   knowingly conduct and attempt to conduct financial

13   transactions affecting interstate and foreign commerce, which

14   transactions involved the proceeds of specified unlawful

15   activity -- that is, mail and wire fraud -- knowing that the

16   transactions were designed in whole and in part to conceal

17   and disguise the nature, location, source, ownership, and

18   control of the proceeds of specified unlawful activity, and

19   that while conducting and attempting to conduct such

20   financial transactions, knew that the property involved in

21   the financial transactions represented the proceeds of some

22   form of unlawful activity, in violation of Title 18, United

23   States Code, Section 1956(a)(1)(B)(1); and

24        B, laundering of monetary instruments, that is, to

25   knowingly engage and attempt to engage, in monetary

1    transactions by, through, and to a financial institution,

2    affecting interstate and foreign commerce, in criminally

3    derived property of a value greater than $10,000, that is

4    deposit, withdrawal, and transfer of monetary instruments,

5    such property having been derived from a specified unlawful

6    activity -- that is, mail and wire fraud -- in violation of

7    Title 18, United States Code, Section 1957.

8         Count Twenty-Three of the Second Superseding

9    Indictment also alleges that the defendant Bank and his

10   co-conspirator:

11        A, concealed the original and true source of

12   fraudulently obtained funds by transferring and laundering

13   those moneys through multiple financial accounts;

14        B, laundered funds to conceal those moneys from law

15   enforcement;

16        C, transferred and laundered funds through multiple

17   financial accounts in order to avoid paying federal taxes on

18   such funds;

19        D, transferred and laundered funds through financial

20   accounts to avoid disclosing the failure of investment

21   offerings to victims;

22        E, transferred and laundered funds exceeding $10,000

23   to support Bank's lavish lifestyle.

24        In addition, the ways, manner, and means that

25   Defendants Bank and Gibson used to accomplish the objectives

1    of the conspiracy included, but were not limited to, the

2    following acts, transactions all originally derived from

3    investor funds.

4           Now, ladies and gentlemen, on Count Twenty-Three,

5    when we start talking about the ways and means, if you look

6    at the bottom of this instruction that I was just reading,

7    Instruction Number -- I think it's 72.  Let me make sure.

8    Yes, Instruction Number 72.

9           If you look at the bottom of that count, it lays out

10   about three pages of different monetary/financial

11   transactions.  The Court is not reading all of those.  As a

12   matter of fact, it's four pages, five pages -- no, six pages.

13   Wrong again.

14          It's almost ten pages of different transactions that

15   the defendant is allegedly involved or engaged in reflecting

16   ways, manners, and means that they used to accomplish the

17   objectives of this conspiracy.  You can read down this sheet

18   and see what those dates and times and what those activities

19   were in this case.

20          Now, that's the nature of the offense for

21   Count Twenty-Three, which is a conspiracy count.  Once again,

22   I want you to remember all the instructions I've given you

23   about participation in a conspiracy, but I will read to you

24   the statute defining the offense.

25          Title 18, United States Code, Section 1956(h) states

1    in pertinent part:

2            Any person who conspires to commit concealment money

3    laundering or unlawful monetary transactions shall be subject

4    to the same penalties as those prescribed for the offense,

5    the commission of which was the object of the conspiracy,

6    shall be guilty of an offense against the United States.

7            In turn, Title 18, United States Code, Section

8    1956(a)(1)(B)(1) provides in pertinent part -- I think I read

9    this to you before:

10           Whoever, knowing that the property involved in a

11   financial transaction represents the proceeds of some form of

12   unlawful activity, conducts or attempts to conduct such a

13   financial transaction which, in fact, involves the proceeds

14   of specified unlawful activity, knowing that the transaction

15   is designed in whole or in part to conceal or disguise the

16   nature, the location, the source, the ownership, or the

17   control of the proceeds of the specified unlawful activity,

18   shall be guilty, again, of an offense against the

19   United States.

20           In turn, Title 18, United States Code, Section 1957

21   provides in pertinent part:

22           Whoever knowingly engages or attempts to engage in a

23   monetary transaction and criminally derived property of a

24   value greater than $10,000 and is derived from specified

25   unlawful activity shall be guilty of an offense against the

1    United States.

2         That's the statute defining the offense to

3    Count Twenty-Three.

4         Now, let's go over and talk about the elements, in

5    other words, what the government has to prove.

6         Title 18, United States Code, Section 1956(h), makes

7    it a crime for anyone to conspire to commit money laundering.

8    For you to find the defendant guilty of this crime, you must

9    be convinced that the government has proved each of the

10   following elements beyond a reasonable doubt:

11        First:  That the defendant and at least one other

12   person made an agreement to commit the crime of concealment

13   money laundering or unlawful monetary transactions;

14        Second:  That the defendant knew the unlawful

15   purpose of the agreement;

16        Third:  That the defendant joined in the agreement

17   willfully, that is, with intent to further the unlawful

18   purpose.

19        Now, one may become a member of a conspiracy without

20   knowing all the details, ladies and gentlemen, of the

21   unlawful scheme or the identities of all the other alleged

22   co-conspirators.  If a defendant understands the unlawful

23   nature of a plan or scheme and knowingly and intentionally

24   joins in that plan or scheme on one occasion, that is

25   sufficient to convict him for a conspiracy even though the

1   defendant had not participated before and even though the

2   defendant played only a minor role.

3          The government need not prove an overt act in

4   furtherance of the conspiracy.

5          Now, the next element, still with respect to

6   Count Twenty-Three, deals with elements of concealment.

7          In order to prove the crime of money laundering in

8   violation of Section 1956(a)(1)(B), the government must

9   establish beyond a reasonable doubt each of the following

10  elements:

11         First:  That the defendant conducted, or attempted

12  to conduct, a financial transaction involving property

13  constituting the proceeds of a specified unlawful activity;

14         Second:  That the defendant knew that the property

15  involved in the financial transaction was the proceeds of

16  some form of unlawful activity; and

17         Third:  That the defendant knew that the transaction

18  was designed in whole or in part either to conceal or

19  disguise the nature, location, source, ownership, or control

20  of the proceeds of specified unlawful activity, or to avoid a

21  transaction reporting requirement under state or federal law.

22         Now we get down to the last set of counts, Counts

23  Twenty-Four through Twenty-Eight, dealing with unlawful

24  monetary transactions.

25         Counts Twenty-Four through Twenty-Eight of the

1    Second Superseding Indictment charge that from on or about

2    the following dates and in the manner described below --

3           There's a chart at the bottom of this instruction

4    laying out what the counts are.

5           -- in the Eastern District of Virginia and

6    elsewhere, Defendants Daryl G. Bank and Billy J. Seabolt

7    knowingly engaged and attempted to engage in the following

8    monetary transactions by, through, and to a financial

9    institution, affecting interstate and foreign commerce, in

10   criminally derived property of a value greater than $10,000,

11   that is, money deposits which represented fraudulently

12   obtained funds from investors, such property having been

13   derived from a specified unlawful activity -- that is, wire

14   fraud -- in violation of Title 18, United States Code,

15   Section 1343.

16          If we go to Count Twenty-Four, it gives you the

17   defendant involved, the date of the conduct, and the

18   financial transaction.  If you go to Count Twenty-Five, you

19   have the same thing laid out right through

20   Count Twenty-Eight.  That tells you what is charged.

21          What does the statute say about this conduct?

22          Section 1957 of Title 18 states the following:

23          Whoever knowingly engages or attempts to engage in a

24   monetary transaction in criminally derived property of a

25   value greater than $10,000 and is derived from specified

1    unlawful activity shall be guilty of an offense against the
2    United States.
3              What are the elements the government needs to prove
4    on each count, Count Twenty-Four through Twenty-Eight?
5              In order to prove the crime of engaging in monetary
6    transactions and property derived from specified unlawful
7    activity, in violation of Section 1957, the government must
8    establish beyond a reasonable doubt each of the following:
9              First:  That the defendant engaged in, or attempted
10   to engage in, a monetary transaction in or affecting
11   interstate commerce;
12             Second:  That the monetary transaction involved
13   criminally derived property of a value greater than $10,000;
14             Third:  That the property was derived from specified
15   unlawful activity;
16             Fourth:  That the defendant acted knowingly, that
17   is, with knowledge that the transaction involved proceeds of
18   a criminal offense;
19             Fifth:  That the transaction took place in the
20   United States.
21             Now we take to explaining a couple of things
22   pertaining to these transactions.  We've got a few elements
23   we need to explain.  As a matter of fact, I'm going to have
24   to read you instructions to explain each one of these
25   elements I referred to.

```
1              The first element:  The first element that the
2       government must prove beyond a reasonable doubt is that the
3       defendant engaged in a monetary transaction in or affecting
4       interstate commerce.
5              The term "monetary transaction" means the deposit,
6       withdrawal, transfer, or exchange, in or affecting interstate
7       or foreign commerce, of funds or a monetary instrument by,
8       through, or to a financial institution.
9              The term "interstate or foreign commerce" means
10      commerce between any combination of states, territories, or
11      possessions of the United States, or between the
12      United States and a foreign country.
13             You must find that the transaction affected
14      interstate commerce in some way, however minimal.  This
15      effect on interstate commerce can be established in several
16      ways.
17             First, any monetary transaction with a financial
18      institution insured by the Federal Deposit Insurance
19      Corporation or the National Credit Union Share Insurance Fund
20      affects interstate commerce.  So if you find that any of the
21      banks at issue in this case was insured by the FDIC or the
22      NCUSI -- that is, the National Credit Union Share Insurance
23      Fund -- that is enough to establish that the transaction
24      affected interstate commerce.
25             Second, if you find that the source of the funds
```

1   used in the transaction affected interstate commerce, that is
2   sufficient as well.
3           Third, if you find that the transaction itself
4   involved an interstate transfer of funds, that would also be
5   sufficient.
6           The government and the defendants have stipulated
7   that the relevant financial institutions were insured by the
8   FDIC and the NCUSI and the transactions affected interstate
9   commerce.  That's already proven.
10          The second element:
11          What does it mean to say "transactions involved
12  criminally derived property"?
13          The second element that the government must prove
14  beyond a reasonable doubt is that the monetary transaction
15  involved criminally derived property having a value in excess
16  of $10,000.
17          The term "criminally derived property" means any
18  property constituting, or derived from, proceeds obtained
19  from a criminal offense.  The term "proceeds" means any
20  property derived from or obtained or retained, directly or
21  indirectly, through some form of unlawful activity, including
22  the gross receipts of such activity.
23          The government is not required to prove that all of
24  the property involved in the transaction was criminally
25  derived property.  However, the government must prove that

1    more than $10,000 of the property involved was criminally
2    derived property.
3                The third element:
4                First, the term "property derived from specified
5    unlawful activity," that may be very clear to you, but we're
6    going to read it anyway.
7                The third element that the government must prove
8    beyond a reasonable doubt is that the defendant knew that the
9    property involved in the financial transaction was the
10   proceeds of some form of unlawful activity.
11               I instruct you that this element refers to a
12   requirement that the defendant knew the property involved in
13   the transaction represented proceeds from some form, though
14   not necessarily which form, of activity that constitutes a
15   criminal offense under state of federal law.  I instruct you
16   as a matter of law that wire fraud is a criminal offense.
17               The fourth element refers to knowledge.
18               The fourth element that the government must prove
19   beyond a reasonable doubt is that the defendant knowingly
20   engaged in an unlawful monetary transaction, as defined
21   above.
22               I instruct you, ladies and gentlemen, that in a
23   prosecution for an offense under this section, the government
24   is not required to prove that the defendant knew the
25   particular offense from which the criminally derived property

was derived.  However, the government must prove beyond a
reasonable doubt that the defendant knew that the transaction
involved criminally derived property, which, I remind you,
means any property constituting, or derived from, proceeds
obtained from a criminal offense.

If you find that the government has established
beyond a reasonable doubt the defendant knew that the
transaction involved property derived from a criminal
offense, then this element is satisfied.

And the last element, the transaction took place in
the United States.  What does that mean?

The fifth element that the government must prove
beyond a reasonable doubt is that the transaction took place
in the United States.

Ladies and gentlemen, we are down to the last three
instructions.

I caution you, members of the jury, that you are
here to determine the guilt or innocence of the accused, or
the defendants, from the evidence in this case.  The
defendants are not on trial for any act of conduct or offense
not alleged in the indictment.  Neither are you called upon
to return a verdict as to the guilt or innocence of any other
person or persons not on trial as a defendant in this case.

Also, the punishment provided by law for the
offenses charged in the indictment is a matter exclusively

1    within the province of the Court or the Judge and should

2    never -- never -- be considered by the jury in any way in

3    arriving at an impartial verdict as to the guilt or innocence

4    of those accused.

5           Now, I permitted you to take notes during the trial.

6    Your notes shall be used only as memory aids.  You should not

7    give your notes precedent over your independent recollection

8    of the evidence.  If you did not take notes, you should rely

9    on your own independent recollection of the proceedings, and

10   you should not be influenced by the notes of other jurors.

11          I emphasize that notes are not entitled to any

12   greater weight than the recollection or impression of each

13   juror as to what the testimony may have been.

14          This is the last instruction, your verdict:

15          Your verdict must represent the considered judgment

16   of each juror.  In other words, your verdict must be

17   unanimous on each count.

18          Each of you must decide the case for yourself but

19   only after an impartial consideration of all the evidence in

20   the case with your fellow jurors.

21          It is your duty as jurors to consult with one

22   another and to deliberate with a view to reach an agreement

23   if you can do so without violence to your individual

24   judgment.  In the course of your deliberations, do not

25   hesitate to reexamine your own views and change your own

1    opinion, if convinced it is erroneous.  But do not surrender

2    your honest conviction as to the weight or effect of the

3    evidence solely because of the opinion of your fellow jurors

4    or for the mere purpose of returning a verdict.

5            Remember, ladies and gentlemen, at all times you are

6    not partisans.  You are the judges.  You are the judges of

7    the facts.  Your sole interest is to seek the truth from the

8    evidence in the case.

9            Now, upon retiring to the jury room, you should

10   first select one of your numbers, one of your members, to act

11   as your foreperson who will preside over your deliberations

12   and will be your spokesperson here in court.

13           Now, a special verdict form has been prepared for

14   your convenience.  You will take the exhibits and the verdict

15   form to the jury room, and when you have reached unanimous

16   agreement as to your verdict, you will have your foreperson

17   fill it in, date it, sign the appropriate form, and then

18   return it to the courtroom.

19           You'll just simply let the court security officer

20   know that you have reached a verdict, and you hang onto that

21   verdict until you come into the courtroom.

22           Now, the verdict form will list the counts of the

23   indictment, and so you will be able to go right down and look

24   at the counts and -- look at those counts as discussed and

25   laid out in these instructions.  Remember, I told you the

1    instructions are indexed, and when you go to Count One in the
2    instructions, it will tell you what is charged, what needs to
3    be proved, et cetera.  You can walk through it that way.
4            Now, if, during your deliberations, you desire to
5    communicate with the Court, your message or question must be
6    put in writing and signed by the foreperson.  You will fold
7    it up, and then you will give it to the court security
8    officer, who will bring it to the Court's attention.
9            If there's any space left on the piece of paper you
10   send the Court, the Court may, after consulting with counsel,
11   respond to you in writing to answer your question, and if
12   necessary, the Court will bring you back in and address you
13   from the courtroom, as you are sitting now.
14           If you do transmit a message or a question to the
15   Court, you must not state or specify your numerical division
16   at that time.  The Court does not want to know who's for what
17   and who's against what.  That's your business.
18           Finally, you should not interpret anything the Court
19   has said or done during the last five weeks as indicating or
20   suggesting to you what your verdict should be or what the
21   Court thinks.  The verdict is exclusively your duty and your
22   responsibility.
23                       * * * * * * *
24
25

1                        CERTIFICATION

2

3        I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7        _____/s/_____

8                     Carol L. Naughton

9                     May 26, 2021

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Carol L. Naughton, Official Court Reporter